## Cook *vs.* Cook.

A suit for a divorce, on the ground of adultery, is terminated by a final decree directing a divorce with or without costs, and which contains no reservation of a right to the wife to apply for alimony. And the wife, after her re-marriage to another husband, in conjunction with such second husband, may apply to the court, by petition, for an order giving to her the care and custody of a child of the first marriage, without reviving the suit.

The power given to the court of chancery, by the statute, in a suit for a divorce, to direct as to the care and custody of the children, either before or after the final decree, is a mere collateral power.

An agreement between husband and wife, as to the custody of their children, made previous to a decree for divorce, will not have a controlling influence upon the decision of the court with respect to the care and custody of such children.

The object of the statute, in giving to the court of chancery the power to direct which of the parties, in suits for divorce, shall have the care and custody of the minor children, where the husband is the guilty party, was not to gratify the wishes of the parents, but to protect and provide for the children of the marriage.

· THIS was· an. appeal· by the. defendant from an· order of the·
vice chancellor of the.seventh circuit, giving. to the mother·the:
custody of one of the infant children· of the parties.

The complainant· filed her bill, for a.divorce, on the ground·of
the adultery of the.defendant.   The bill was taken as confessed·
for· want of an.answer ; and· the complainant having established,
the fact of adultery, before the master upon a reference, a decree
for a divorce was. entered. therein, in· the usual· form, prohib:
iting. the defendant. from·marrying again during. the lifetime of
the complainant   There were. two children of: the marriage, at
the time of the divorce in 1842, a son of. the age of five years,
and· a daughter nearly three years old.   No direction was given
in the decree as to the custody of these children; there having,
been a previous.agreement between the parties, as alleged by the
mother, that she should have the custody of the· daughter and
the defendant the custody of the son.·   Shortly after the divorce
the complainant married again, as she was authorized to do by the
decree.   The infant son continued to reside with his father and
grandfather, and the daughter lived with, and was taken care of
and provided for by the mother, and her new husband, until Sep-
tember, 1845, when the father, under pretence ˙ of taking his
daughter out to ride merely, clandestinely carried her away with
him to the city of New-York ; to which place he had then removed.
The complainant and her husband thereupon presented a petition,
entitled in the suit, to the vice chancellor of the seventh circuit,
before whom the proceedings for the divorce were had, stating
these facts, and asking for the care and custody of this child.   And
to this petition they annexed affidavits showing that the defen-
· dant continued to carry on an adulterous intercourse in the·city
of New-York, and that he was in the habit of associating. with
common.prostitutes there.   The defendant procured affidavits,
to be used in opposition to the application, impeaching the char-
acters. of.some of the deponents whose depositions were annexed
to the. petition.   But in his own affidavit he did not deny. the
truth of. the specific charges of misconduct made against him in
the petition, and supported by those depositions.   He however
˙produced affidavits to impeach the conduct of the complainant

previous to the decree for a divorce, and to show that she had sometimes exhibited violent acts of passion towards her present husband since she was married to him.

The vice chancellor awarded the care and custody of the infant daughter to the mother, until further order, and enjoined the defendant from removing or interfering with it, without the consent of the mother, until the further order of the court. From that decision the defendant appealed to the chancellor.

*L. R. Marsh*, for the appellant. The motion is made in this cause, and if it is not a proper motion in this cause, or if the cause is not in a position to enable such a motion to be made, it cannot be sustained. The cause is not in a position to enable the motion to be made. It has abated by the marriage of the complainant. (*Quackenbush* v. *Leonard*, 10 *Paige*, 131. *Mitford's Ch. Pl.* 57. *Story's Eq. Pl.* 289, § 354.) And it can only be revived by bill of revivor. (10 *Paige*, 131.) The cause must be revived before any application can be made for the custody of the child. The two things cannot be blended. There was nothing in the alleged agreement that destroys the father's right to the child. There was no agreement in point of fact. Or, if there was any such agreement, in fact, made, it was void in law. (1) As being for a future separation. (2) There was no trustee, or third contracting party. (3) An agreement between husband and wife is void. (4) It was to procure a divorce. (5) There was no consideration. If there had been a valid agreement, in fact, made, the court are not bound by it; but will consult the welfare of the child. The father is entitled, by the law, to the custody of his child. There are no facts in this case which override the rule of law, and prove the mother to be the proper custodian of the child. It is true, the father is charged with adultery. But the charges in the petition and affidavits are disproved. The evidence for the decree of divorce was insufficient. The mother cannot avail herself of this, if true, for she is in pari delicto. The mother is utterly unfit to have the charge of the child—and the father is a proper person

---

---

to have that charge. The child is not of tender age, or of sickly habits, so as to require the care of a mother.

*B. Davis Noxon & D. D. Hillis,* for respondent. The statute has authorized the court, in case of a divorce, to make such order in regard to the custody of the children as their welfare may seem to require; and this may be done pending the suit, at the decree, or afterwards. (2 *R. S.* 148.) An agreement having been made pending the suit for a divorce, and in reference to it, between the parties, in relation to the custody of the children, each parent taking one, no order was asked for, or made by the court, touching their custody. And the court will now entertain the matter, and make the order in the original suit. The agreement touching the care and education of the children, made pending the suit, while the parties were living separate, without the least prospect of living together again, in view of a divorce, upon good consideration, and an actual delivery of the children after the divorce, one to each of the parents, by virtue of the agreement, and an acquiescence by both parents for several years, in the custody of one being in each of the parents, is valid, and a flat bar to the claim of the defendant to the female infant. The court of chancery will enforce this agreement. (2 *East,* 283. *Lister's case,* 8 *Mod.* 22. 1 *Strange,* 478. *Mary Mead's case,* 1 *Burr.* 542. 2 *Vern.* 67. 1 *Jac.* 245. 2 *Ventr.* 217. 4 *Vin. Abr. tit. Baron and Feme,* 172 *to* 179. *Sealey* v. *Crawley,* 2 *Vernon,* 386. *Angin* v. *Angin, Prec. in Chan.* 496. *Guth* v. *Guth,* 3 *Bro. C. C.* 614. *Powel* v. *Charn,* 2 *Id.* 499. *Matter of McDowles,* 8 *John.* 328, 353. *Mercein's case, court of errors,* 25 *Wend.* 64; *see opinions of the Chancellor and Senator Paige,* 92, 98. 2 *Atk.* 511. 2 *Barn. & Cress.* 547. 2 *Sim. & Stuart,* 372.) If the agreement is not a bar, it is the admission of the husband that the complainant ought to have the custody of her female child. This is a continuing admission, acting *in præsenti* up to the present time. This agreement, drawn up, signed and solemnly delivered by the defendant to the counsel for the complainant, and by him to her, being executed by the complainant in his favor by surrendering to nim

her oldest child, and the payment of $100 to the defendant, he is estopped from committing a fraud by denying its validity, as to this child; and no tribunal should aid the defendant in violating an agreement thus solemnly made, especially after it has been quietly acquiesced in for several years. The father has no paramount inalienable right to take the children from their mother, regardless of their age, sex and circumstances. This court will exercise its discretion, if the agreement is not binding, and act on the custody of the child with the best regard to its health, comfort and welfare. (5 *Binn.* 520. *State* v. *Smith*, 4 *John. Ch.* 80. 8 *John.* 253. 13 *Id.* 418.) The old English cases establish this doctrine; and it was recognized as late as 1827, in *Wellesly* v. *Duke of Beaufort*, (2 *Russ. Ch. Rep.* 639.) The act of our legislature (2 *R. S.* 82,) has settled the rights of the mother to be different from what has been asserted to be the law; especially by the supreme court in some cases. The father in this case has been divorced for adultery, and he is debarred by the decree from ever marrying again. The child cannot, therefore, have even a step-mother; and having no paternal grandmother, she is to be without the care of a female parent, if the defendant's claims are sustained. By common consent, in accordance with the dictates of nature and humanity, the mother is regarded as the guardian by nature and nurture of young female children, and as being better calculated than the father to nurse and protect them in early childhood, both in sickness and in health. (*Rex* v. *Wangford*, 1 *Lord Ray.* 395.) If a husband, by acts of adultery, forfeits his conjugal rights and renders himself an unfit companion for his wife, shall he be permitted to add injury to injury and take from her arms her helpless offspring? No tribunal, governed by the common feelings of humanity, will take her female child from her, under such circumstances; especially as the child has no property; and this is a guardianship for nurture only. The present husband of the complainant is able to support and educate the child, and has expressed a willingness to enable the complainant to do so, to the extent of his means. He has no children, and this child will inherit his property.

THE CHANCELLOR. The objection that the complainant had not revived the suit, in the name of her husband and herself, subsequent to her re-marriage, was an objection of form merely. It could not therefore be insisted on here, under the conditions upon which the appellant has been permitted to have the decree of affirmance opened ; even if it was valid as an objection before the vice chancellor. I also think the objection was untenable in reference to the particular application which was made to the vice chancellor. The suit itself was in fact terminated by the final decree; as no costs were awarded, and no right was reserved to the wife to apply for alimony for her own support. The power given to the court, by the statute, to direct as to the care and custody of the children, either before or after the final decree, from time to time as may be necessary, appears to be a mere collateral power. And I can see no possible benefit which could result to any one from a formal revival of the suit, in reference to such a proceeding. All that can be necessary, either in form or substance, is that the husband, whom the complainant has married since the decree for a divorce, should join with her in the petition for the care and custody of her children ; so as to render himself liable to the defendant for costs if the application is unsuccessful. And that has been done in this case.

So far as respects the defendant himself, he admits the various acts of adultery, and with different persons, as charged in the bill. And as he does not attempt to deny them at this time, they must be taken to be true for the purposes of this application; although but one act was proved before the master upon the reference. That however would not be sufficient of itself to exclude him, absolutely and forever, from the care and custody of his infant children, if the court could be satisfied that he had subsequently abandoned his licentious intercourse and become a reformed man. Nor should the agreement as to the custody of the children, made previous to the decree, have a controlling influence upon the decision of the court, in such a case. The object of the statute in giving the court the power to direct which of the parties shall have the care and custody of the

Cook v. Cook.

minor children, where the father has so conducted himself as to justify either an absolute or a limited severance of the marriage tie, was not to gratify the wishes of the parents. It was for the protection of the children, who by the misconduct of one parent had necessarily become half orphans. Besides, it would be a dangerous practice to allow parties to agree between themselves as to the custody of their children, in such a case, previous to a divorce. It would lead to collusion, in furnishing causes for divorces, if bargains of this kind could be made beforehand which the court was bound absolutely to sanction and carry into effect. For this reason this court uniformly refuses to sanction an agreement by the wife, in anticipation of a divorce for the alleged misconduct of the husband, to take a stipulated sum in lieu of her claim for alimony; but requires evidence that it is a reasonable allowance, in reference to the amount of his property, or reserves to her the right to go before a master upon the question of the amount of alimony after the decree has settled her right to a divorce.

From the affidavits annexed to the petition I am satisfied that an agreement in writing was made between the parties, and substantially in the form stated in the petition of the respondents; and that the $100 was paid to the defendant, by some one, to induce him to consent to the written agreement which was then made. But I am not satisfied that this arrangement was not directly connected with a further understanding, between the parties, that the wife should be permitted to obtain a divorce from the defendant without opposition. No attempt at a defence could have been made by the defendant, for the reference to the master was within six weeks after the b ll was sworn to. And the agreement alluded to was probably made before the commencement of that suit, as the petitioner and her witnesses refrain from saying that the suit was pending at the time that agreement was made. But the adultery, proved by the conscientious young woman who declined to name the adulteress for fear of injuring her character, could not have been committed in pursuance of that agreement. For it is sworn, in the bill, that the defendant committed adultery with that witness in

Albany, in February, 1841, which was more than six months before the final separation of the parties. And the witness saw the adultery committed with the unnamed individual in the winter of 1841, in the city of Albany. The only defence, therefore, which the defendant probably could have made was the alleged misconduct of the complainant, for which he had brought the suit against her present husband. The circumstances under which that agreement was made induce me to lay it entirely out of view in deciding this appeal. And I put my decision upon the question as to what is most for the interest of the child, upon the facts which were before the vice chancellor at the time the order appealed from was made.

That the defendant himself had committed numerous acts of adultery with different persons, previous to the decree for divorce, is distinctly charged in the bill, and not denied by him in any form, either in that suit, or upon the application to the vice chancellor, by the mother, to obtain the custody of the child. One of those adulteries was also proved before the master upon the reference. And the affidavits which were served upon him with the notice of the presenting of the petition, show that his libidinous intercourse with abandoned women is still continued. He had a full opportunity to deny the particular facts stated in those affidavits if he could deny them with safety, but has not done so. I must, therefore, for the purposes of this application, consider the allegations as true ; notwithstanding the attempt to discredit the witnesses, by the ex parte affidavits of others who do not pretend to disprove the particular facts sworn to on the other side. It is, therefore, evident that the defendant is not a proper person to be entrusted with the care and education of his infant daughter without the superintending care of her mother.

On the other hand, the conduct of the mother previous to the divorce, if the affidavits of the defendant and some of his witnesses are to be credited, was such as to lead to a suspicion that she too was unfaithful to the marriage bed. But no one swears to any thing amounting to certain or even prima facie evidence of guilt in this respect; although her imprudence was such as

to induce some of her neighbors to distrust her. Since the divorce, however, there is nothing to excite a suspicion that she has not conducted herself properly in this respect. The only thing which is charged against her since that time is, that she sometimes gives way to violent ebullitions of passion towards her present husband. But there is nothing to create even a suspicion that this child had not been kindly treated, and properly supported and cared for, both by its mother and step-father, for the two years and a half which it was allowed to remain with them subsequent to the decree. On the contrary, it appears that the child, while she remained with them, was kindly treated, comfortably clothed and otherwise provided for, and furnished with the means of instruction suitable to her age. The vice chancellor was therefore right in awarding the custody of this child to the mother, and without reference to the agreement which was made previous to the divorce.

The order appealed from must be affirmed. And the appellant must pay to the respondents,' Allen and wife, their costs upon this appeal, to be taxed.