# DAVID BURNS ET AL. v. COMMONWEALTH.

ERROR TO THE COURT OF QUARTER SESSIONS OF BLAIR COUNTY.

Argued April 24, 1889—Decided November 11, 1889.
[To be reported.]

1. The offence provided against by § 94, act of March 31, 1860, P. L. 405, is that known and punished by the common law as kidnapping,* and it extends not only to cases where the intention is to detain the child kidnapped, but to steal any article of apparel or ornament about the person of the child.
2. But the section has no application to contests between parents for the possession of their children; and a father, who takes and withholds his

---

* Kid: Dan. and Sw. kidh, that which is produced; kith, kin, chit, child. Nap: same as nab; Dan. nappe, to snatch.

Charge of Court below.

child from its mother, who, with or without cause, has abandoned his home, does not thereby become liable to a criminal indictment drawn under said section, nor do those who aid him therein.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 417 January Term 1889, Sup. Ct.; court below, No. 19 January Term 1889, Q. S.

On January 15, 1889, the grand jury returned as a true bill an indictment drawn under § 94, act of March 31, 1860, P. L. 405, charging that David Burns and Nettie Burns " maliciously, by force and fraud, did lead, take and carry away, and decoy and entice away a child under the age of ten years, to wit: Maud E. Gregory, two and one half years old, the daughter of Mrs. Delilah Gregory, with intent to deprive its parent, the said Mrs. Delilah Gregory, she having the lawful charge and care of said child, of the possession of said child," etc. The defendants pleaded not guilty.

At the trial on January 24, 1889, it appeared that A. B. Gregory and his wife, Delilah, separated on November 19, 1888, Mrs. Gregory going to her father's and taking Maud E. Gregory, their only child, with her. About November 17th, Mr. Gregory, alleging that he was ill, sent for the child, and his wife returned with it. There was no reconciliation, and her visit was to be but temporary. The commonwealth introduced testimony to show that as soon as the child was brought to his house, Mr. Gregory recovered from his illness and took the child to a room to which Mrs. Gregory was denied access; that in a short time he took the child to Mr. and Mrs. Burns, Mrs. Burns being his sister; that every effort of Mrs. Gregory to regain possession of it, by writ of habeas corpus and otherwise, failed, and about December 13, 1888, Mrs. Burns took the child with her on the train to Tyrone, where she was met by Mr. Gregory who took it and left the state with it.

The court, DEAN, P. J., charged the jury as follows :
From the evidence on the part of the commonwealth, it seems too plain to admit of any doubt that the father of this child did, by an artifice or trick unworthy of a husband and father, get possession of this child from its mother. The child

was peaceably in her custody, and there is not a single word of evidence tending to show that she was not an entirely competent person to have the custody of a child, and especially of her own child of tender years. It is proven here, and not denied on the part of the defendants, that A. B. Gergory did get this child against the consent of its mother; that he did maintain possession of it, and did leave the jurisdiction of the court, taking it with him out of the jurisdiction of the court and out of the commonwealth, so that it cannot now be had. He was guilty most clearly under this act, and if he were here and on trial on this evidence, as it is now developed, and not answered so far as he is concerned, he would clearly be guilty of having abducted this child out of the custody of the parent in whose peaceable and rightful custody it was, no matter what might have been the determination on the hearing of the writ of habeas corpus. The mother had the child, and it was taken from her; he had no right to take it in that way, and the law will not countenance any such method.

The only question here is, did the defendants, or either of them, aid and abet him in taking this child from its mother? In a misdemeanor there are no accessories before the fact. The man who acts in the commission of a misdemeanor, and those who stand by and in any way aid or encourage him, are all equally guilty. Did these defendants, or either of them, aid or abet A. B. Gregory in taking this child from its mother, in leading it away from her and keeping it away? The commonwealth alleges that at the time the child was taken to the other part of the house and the door was locked, Mrs. Burns was there on the other side of the door, and that she knew how the child had been obtained; and the commonwealth asks you to infer from her acts, as well as from her failure to act, that she was, in the inception of the matter, aiding and abetting her brother. It is alleged that the child was afterwards found in her possession; that she seemed to be taking care of it and aiding her brother, its father, to carry it up and down the railroad between Altoona and Tyrone; and that she acted in a peculiar manner, leaving home and returning at unseasonable hours, and otherwise demeaning herself in such manner as to indicate a knowledge on her part of an attempt to keep the child from its mother, and an effort on her part to aid the father

in so doing.  You have heard the testimony of the conductors and other witnesses as to the movements of Mrs. Burns on the railroad, and at Tyrone and elsewhere.  It is alleged, further, that both she and her husband falsified to the sheriff, at the time he served the writ of habeas corpus, as to the whereabouts of Gregory and as to their knowledge of the child, indicating on their part a guilty knowledge, and pointing to an attempt to aid him in the abduction of this child.  It is also alleged that after this prosecution was instituted Mrs. Burns displayed a knowledge of the child's whereabouts, and exercised a power over it, such as could not be obtained innocently; and that she offered to have the child brought back if the suit against her was settled, at the same time threatening that its mother would never see it again alive if the suit was not settled.

On the other hand, the defendants swear that they did not assist in taking this child away, and David Burns says that so far as he is concerned, he had nothing to do with it; that he knew nothing of his wife's trip to Tyrone with the child, nor anything of any attempt or desire on the part of his brother-in-law, Gregory, to take the child away.  Mrs. Burns says she rendered to the child only such assistance as it would be natural in a woman to render to her brother's child, and that when the child needed any attention from her she rendered it because the mother was not there to do it; as she would have done to anybody's child under similar circumstances, without any intention on her part to aid her brother in wrongfully taking this child out of the possession of its mother, or of aiding him in evading the process and defying the power of the court. You have heard the testimony adduced by the defendants, as well as that offered on the part of the commonwealth, tending to show guilt on their part, as the commonwealth claims, and the whole case is with you.

Clearly the conduct of this man Gregory has been most defiant, wicked and outrageous.  He has acted in such a manner as to call for severe punishment, if the law can seize him; but he has thus far successfully evaded the process of the court and trial on the warrant of arrest issued against him.  But whatever may be his guilt, the question for you is, not how guilty he was, but was he, in his guilty conduct, aided and abetted by his brother-in-law and sister?  Did they render him

assistance, knowing they were aiding to lead away and keep away this child from the custody of its mother, or from the custody of the law, after the writ of habeas corpus was issued? The writ was gotten out on the suggestion of the mother, and only for the purpose of restoring the child to her possession; and the condition or status of the case is not materially changed by reason of the writ of habeas corpus, which did not give to Gregory, or to any one aiding him, immunity from punishment for taking away the child. If the evidence satisfies you beyond a reasonable doubt that the defendants or either of them aided or abetted this man Gregory in taking this child away, and keeping it away, as charged by the commonwealth, they or that one of them is guilty, and should be so found. If you have a reasonable doubt as to the guilt of both, then you should find a verdict of not guilty. They are entitled to the benefit of any reasonable doubt as to their guilt.

The court has been requested by the counsel for the defendants to say to the jury:

1. That there is no evidence to sustain a conviction on this indictment; as the evidence of the commonwealth, in so far as it affects either of the defendants, shows that the custody of this child was in A. B. Gregory, at the time the writ of habeas corpus was issued, December 10, 1888; and that the defendants had no control over it.

Answer: This point is denied.[1]

2. The act of assembly does not intend to make a father liable to its penalties for taking a child of his own, unless an order or decree of some competent court having jurisdiction of the subject matter was first made, giving the custody and control to the mother or some other person; and if the father, A. B. Gregory, could not be guilty under the act if he were indicted, it follows that there can be no accessories.

Answer: This point is denied; it is not the law.[2]

3. That upon the whole evidence in this case, the defendants must be acquitted.

Answer: This is denied. There is evidence here for your consideration; and, as you determine the truth of it, so will you bring in your verdict.[3]

The jury returned a verdict of guilty, upon which judgment

was subsequently passed. The defendants, having obtained an allowance thereof, then took this writ, assigning as error:

1–3. The answers to defendant's points.[1 to 3]

*Mr. A. V. Dively*, for plaintiffs in error.

*Mr. Martin Bell, Jr.*, District Attorney (with him *Mr. W. I. Woodcock*), for the commonwealth.

OPINION, MR. JUSTICE MCCOLLUM:

This case grows out of quarrels between A. B. Gregory and his wife, Delilah, which resulted in their separation in November last, and a contest for the possession of their only child, Maud, aged two years and four months. When Mrs. Gregory separated from her husband she took Maud with her, but upon his representation that he was sick and desired to see his child, she returned with it to his home. Her departure was on the 19th, and her return on the 27th, of November. There was no reconciliation between the husband and the wife, and no effort by either to effect one. The visit of the wife was intended as temporary, and was induced by the representations mentioned. There is reason to believe that sickness was feigned by the husband as part of a scheme or device to get possession of his child. After the child was returned to him, he made known to the mother his purpose to retain possession of it, and to prevent her from again taking it away. From the 27th of November to the 14th of December, when he removed from the state, and carried the child away with him, he kept exclusive possession and control of it, and denied the mother access to it. It is alleged that his sister, Nettie Burns, and her husband, David Burns, aided and abetted him in getting and keeping possession of the child, and concealing it from its mother, and for this offence they were indicted, convicted, and sentenced. The learned judge told the jury that Gregory was guilty of the offence described in the indictment, and that the only question for them was whether Burns and his wife assisted him in taking and keeping the child from its mother. This instruction invites the criticism that it relieved the jury from any consideration of the essential ingredient of the crime, viz., the motive and intent of Gregory in securing

and retaining possession of his child, and of his sister and her husband in aiding him; and it authorized a conviction of the defendants without a finding by the jury that they acted maliciously. But as this instruction is not complained of here, we need not consider it further.

The sole contention before us is upon the construction of the ninety-fourth section of the act of March 31, 1860, P. L. 405; and it is conceded that if Gregory in getting and keeping possession of his child is not condemned by it, those who aided him are not. The section referred to is as follows:

"If any person shall maliciously, either by force or fraud, lead, take, or carry away any child under the age of ten years, with the intent to deprive its parent or parents, or any other person having the lawful charge or care of such child, of the possession of such child, by concealing and detaining such child from such parent or parents, or other person or persons having the lawful charge or care of it, or with intent to steal any article of apparel or ornament, or other thing of value or use, upon or about the person of such child, to whomsoever such article may belong, or shall receive and harbor, with any such intent as aforesaid, any such child, knowing the same to have been so, by force or fraud, led, taken, or carried, or decoyed or enticed away, as aforesaid, every such person shall be guilty of a misdemeanor, and upon conviction thereof be sentenced to pay a fine not exceeding two thousand dollars, and to undergo an imprisonment, by separate or solitary confinement at labor, not exceeding seven years: provided, always, that no person who shall have claimed to be the father of any illegitimate child, or to have any legal right to the possession of such child, shall be liable to be prosecuted by virtue hereof, on account of getting possession of such child, out of the possession of the mother or other person having lawful charge thereof."

It is not claimed that the action of Gregory in securing and maintaining possession of his child is a crime at common law, but the commonwealth insists that the act we have quoted is broad enough, and was intended, to include the case of one parent maliciously taking and carrying away his or her child, under the age of 10 years, with the intent to deprive the other parent of the possession of such child. In defence and sup-

port of this view it is urged that " one of the objects aimed at by the passage of this act was the prevention of quarrels and breaches of the peace over the possession of children." But the report on the Penal Code, page 26, informs us that "the offence provided against in this section is that known and punished by the common law as kidnapping. The object of this section is to extend the protection of the law, not only to cases where the intention is to detain the child kidnapped, but to steal any article of apparel or ornament on or about the person of such child."

The claim of the commonwealth is that the mother was the lawful custodian of this child, and that the father, in taking and detaining it from her in the manner described, became a kidnapper, and subject to the penalties of the act referred to. When parents quarrel and separate, each naturally desires and claims possession of their children, but there is no iron-clad rule which secures to either the sole custody of them. In determining to whom the custody shall be awarded in such cases, the welfare of the child is consulted, and is ordinarily the controlling consideration. An assertion of this claim, without the aid of legal process, does not make the claimant a criminal, unless it be accompanied by a breach of the peace. The father who takes and withholds his child from the wife and mother, who, with or without cause, has abandoned his home, does not thereby become a kidnapper. The statute has no application to contests between parents for the possession of their children. It was enacted to protect parental and other lawful custody of children against the greed and malice of the kidnapper; not to punish their natural guardian for asserting his claim to the possession and control of them. The father is the head of the family, and charged with the duty of maintaining it. He is the natural guardian of his children, and entitled to the custody of them. This right of custody is not absolute; it may be restrained or qualified in the interest of the child; but until he voluntarily surrenders it, or it is suspended by the order of a court of competent jurisdiction, his possession of his child is neither criminal nor unlawful. An abuse of the right may make such an order appropriate or necessary, but it cannot make him a kidnapper.

It is said that the language of the statute is comprehensive

enough to include parents, and this is true; but it is also true that it must be read and construed in the light of its purpose. It was designed to prevent and to punish kidnapping, and not to prohibit one parent from asserting a claim to the possession of his or her child against the will, and to the exclusion, of the other. It has no relation to such disputes, and makes no change in the laws by which they are regulated and settled. That the statute was not intended to apply to a case of this kind is manifest from its proviso, which declares, in substance, that the putative father of a bastard child shall not be liable to prosecution under it for taking such child out of the possession of the mother or other person having the lawful charge of it. As the mother of such a child has the paramount right to the custody of it, the proviso was deemed necessary to prevent the possible application of the statute to a case not within its intendment, but it never entered the legislative mind that the parent of a legitimate child could be held as a kidnapper for taking and keeping possession of it.

> The judgment is reversed, and the defendants, David Burns and Nettie Burns, are discharged from their recognizance in this case.