# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

# District of Columbia.

## HARD *v.* SPLAIN.

EXTRADITION; CRIMINAL LAW; KIDNAPPING; HUSBAND AND WIFE; INFANTS; CONTRACTS.

1. In extradition, it must appear as a condition precedent to the issuance of the warrant, that the person demanded is substantially charged with a crime against the law of the State from which he is alleged to have fled; and this is a question of law open to inquiry on an application for a writ of habeas corpus.

2. In no case, in the absence of an express provision of statute, can a parent be guilty of kidnapping his or her own minor child, unless the forcible taking is from the custody established by the decree of a competent court.

3. A father does not commit the crime of kidnapping, where he forcibly takes his child, who is under twelve years of age, from his wife, the child's mother, even though a statute in force in the jurisdiction of the taking provides that, in case of separation of husband and wife having minor children, the mother shall be entitled to the custody of such children who are under twelve years and the father to the custody of such children who are over that age, where the statute also provides that the probate court may make and enforce any such order as it may deem just as to the care and custody of

Vol. XLV.—1.

such minor children, except in cases where a chancery court has made a decree regarding such children, and that nothing in the act shall prevent any court of competent jurisdiction from making and enforcing such orders as it may deem just as to the care and custody of such minor children, in the same manner and with like effect as it could if the act had not been passed.

4. A father does not commit the crime of kidnapping, where he forcibly takes his minor child from his wife, the mother of the child, even though there exists at the time a separation agreement between his wife and himself, whereby he has agreed that the custody of the child should be in the mother, and to pay her a fixed contribution for her and its support.

5. Separation agreements between husbands and wives which provide for one or the other having the custody of their minor children are not favored by the law.

No. 2887. Submitted February 8, 1916. Decided April 3, 1916.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia overruling a demurrer to the return of a writ of habeas corpus, and denying a motion to discharge the petitioner.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

Application was made to the chief justice of the supreme court of the District of Columbia for the extradition of appellant, Herbert A. Hard, alleged to be a fugitive from justice from the State of Michigan, where he stands charged with the crime of kidnapping. The chief justice issued the usual warrant, commanding appellee, Maurice Splain, as United States marshal for the District of Columbia, to "arrest and bring him, or if he be already in custody, to bring him, together with this writ, before the chief justice of the supreme court of said district, * * * to be dealt with according to law."

Hard sued out a writ of habeas corpus, to which the marshal made return, setting up, as his authority for holding petitioner, the extradition papers presented by the agent of the governor of Michigan, together with the warrant issued by the chief justice. From an order overruling a demurrer to the return to the writ,

and denying a motion to discharge the petitioner, this appeal was taken.

*Mr. James A. O'Shea* and *Mr. Rufus A. Day* for the appellant.

*Mr. John E. Laskey,* United States District Attorney, and *Mr. Mabry C. Van Fleet,* Special Assistant United States Attorney, for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

A criminal complaint was filed before a magistrate in the State of Michigan by one Katherine Hard, charging petitioner with kidnapping one Elizabeth Hard. From the affidavits in support of the complaint, it appears that Elizabeth Hard, the daughter of petitioner, was forcibly taken from the custody of Katherine Hard, her mother, and carried out of the State. The sufficiency of the complaint is assailed by counsel for petitioner, but we think it unnecessary to inquire into the objections, since they relate to defects of pleading, rather than to a total failure to charge a crime under the statute of Michigan relating to kidnapping. The rule in extradition cases, applicable here, is stated in *Pierce* v. *Creecy,* 210 U. S. 387, 52 L. ed. 1113, 28 Sup. Ct. Rep. 714, as follows: "The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the State from which he has fled."

The serious question presented by this record is whether or not what petitioner did constituted the crime charged. To determine this the court will look beyond the mere sufficiency of the complaint as a criminal pleading. In extradition, it must appear as a condition precedent to the issuance of a warrant, that the person demanded is substantially charged with a crime against the laws of the State from which he is alleged to have fled. This is a question of law always open to inquiry

on an application for a writ of habeas corpus. *Hyatt* v. *New York,* 188 U. S. 691, 47 L. ed. 657, 23 Sup. Ct. Rep. 456, 12 Am. Crim. Rep. 311. Petitioner went into the State of Michigan, and forcibly took his daughter, seven years old, from the custody of her mother, and brought her into the District of Columbia. Therefore the question is squarely presented whether this act is a crime under the laws of the demanding state. The statute of Michigan, under which the alleged crime is charged, is in the usual form of State statutes defining the offense of kidnapping, and reads as follows: "Every person who wilfully, maliciously and without lawful authority shall forcibly or secretly confine or imprison any other person within this State against his will, or shall forcibly carry or send such person out of the State, or shall forcibly seize or confine, or shall inveigle or kidnap any other person with intent either to cause such person to be secretly confined or imprisoned in this State against his will, or in any way held to service against his will, shall be punished by imprisonment in the State prison for any term of years, or by a fine of five thousand dollars, or by both such fine and imprisonment, in the discretion of the court." How. Anno. Stat. 2d ed. sec. 14547.

That a father who takes his minor child from the custody of its mother, when the custody has not been placed in the mother by the decree of a court of competent jurisdiction, is not guilty of kidnapping, is settled law. Note to *State* v. *Brandenberg,* 32 L.R.A. (N.S.) 845; *Burns* v. *Com.* 129 Pa. 138, 18 Atl. 756; *State* v. *Angel,* 42 Kan. 216, 21 Pac. 1075; *John* v. *State,* 6 Wyo. 203, 44 Pac. 51. Not only is this proposition true when negatively expressed, but we think it may be positively stated that in no case, in the absence of an express provision of statute, can a parent be guilty of kidnapping his or her own minor child, unless the forcible taking is from the custody established by the decree of a competent court. "Where one parent is entitled to the possession of a minor child as against all the world except the other parent, and where the father and mother are equally entitled to its possession, one of them does not commit the crime of kidnapping by taking exclusive possession of the child.

\* \* \* The rule is quite different, however, where the custody of a child has been decreed to one parent by a competent court. In such a case if the other parent takes the child without the consent and against the will of the parent to whose custody the child has been committed, such parent is guilty of kidnapping, for the custody of a child having been, by the decree of a competent court, given to one parent, that custody must be regarded for all purposes as lawful and exclusive, even as against the other." 8 R. C. L. 297.

While it is conceded that the custody of the child had not been decreed in the mother, it is urged by the district attorney that the legal custody was in her by virtue of sec. 11537 of Howell's Annotated Statutes of Michigan, which provides as follows: "That in case of the separation of husband and wife having minor children, the mother of said children shall be entitled to the care and custody of all such children under the age of twelve years, and the father of such children shall be entitled to the care and custody of all such children of the age of twelve years or over: Provided, that any probate court or any court of competent jurisdiction may, on petition and hearing thereof, make and enforce such order or orders as it may deem just and proper as to the care and custody of such minor children, excepting in cases where an order or decree may have been made by any court in chancery regarding such children: And provided, further, that nothing in this act shall prevent any court of competent jurisdiction from making and enforcing any such order or orders as it may deem just and proper as to the care and custody of such minor children in the same manner and with like effect as it could if this act had not been passed."

We think the custody temporarily provided by this statute is widely different from that established by the decree of a court. In no way does the legislature attempt to interfere with the parental relation. Under it, if the child be under twelve years, the parental duty of the father toward the child remains the same as if the parents and children were living together in harmony. The duty of support still rests upon the father. *Hyde* v. *Leisenring,* 107 Mich. 490, 65 N. W. 536. The pro-

vision of the statute·is a natural one, pending proceedings by a court of competent jurisdiction. This .is plainly all that is contemplated by the legislature, inasmuch as the act specifically provides that it shall not be construed to interfere with the power of the courts to make any proper order touching the custody of such children.

On the other hand, the custody decreed by a court is absolute. It is a complete severance of the parental relation. The custody of the children in the discretion of the court may be taken from one or both of the parents. The parental duty of support may be modified or totally abrogated. By no act of the parties alone may the former relations be re-established while the decree remains in force. Under the Michigan statute the voluntary separation contemplated may be revoked by the parents at will, and a different disposition of the children made by them from that provided in the statute, without incurring any penalty. While the decree stands, the parent against whom the custody is adjudged may be restrained from exercising any control whatever over the child, even from seeing it. The court acts out of consideration for the welfare of the child and society, and with little or no consideration for the parent or parents at fault, whose natural rights in the premises have been forfeited by reason of the conduct which invokes the jurisdiction of the court. A new status or relation is established to which the offending parent becomes so much of a stranger that the parental relation no longer affords immunity from that which, but for that relation, would constitute a violation of law. "It is for the protection of children, and for the benefit of society, that courts take jurisdiction of the status of parent and child, and when that jurisdiction attaches, and a valid and binding decree has been entered which devests either parent of the custody and gives it to the other, then such child is as fully protected from being stolen and carried away by the parent thus devested of its custody as from being taken by a third person." 8 R. C. L. 298.

But the application. of the statute under discussion to the present case was an afterthought. According to the affidavits

filed in support of the complaint, the charge is based upon the existence of a separation agreement entered into between the parents, wherein it was agreed that the custody of the child Elizabeth should be in the mother. It appears that the mother left the marital domicil in the State of North Dakota, taking her three children with her to the State of Michigan, where the contract of separation was subsequently made. There is some intimation in the record that the husband secured a divorce in North Dakota, in which he was decreed the custody of the children, but this does not so appear as to be available in this proceeding. The contract places the custody, care, and education of the children in the mother, with a fixed contribution from the father and husband for their support, and provides "that this agreement shall in no way be affected in the event that either of the parties thereto shall obtain at any time from the other a decree of divorce, but that said payments shall continue after the granting of such a decree the same as before."

This is a contract not favored at law. It cannot be held to so affect the parental relation as to either relieve the father of his responsibility to his child, or to so devest him of its custody as to render him guilty of the crime of kidnapping when he forcibly brought her to his home in the District of Columbia. In the case of *State* v. *Powe,* 107 Miss. 770, L.R.A.1915B, 189, 66 So. 207, where, as here, the father contracted away the custody of his child to the mother, the court, holding that he was not guilty of kidnapping, said: "This is a prosecution by the State for a violation of a statute. The duty to support and care for his child is imposed upon the father by law. He is answerable to the State for the abandonment and failure to support his child. He cannot, by agreement with the mother of the child, relieve himself of his responsibility to the State in the performance of his duty. While this responsibility continues, certainly there goes along with it some right over the child. It should not be said that, by reason of the agreement in this case, there has been such complete annulment and dissolution of the sacred relation of parent and child as to render the father guilty of kidnapping when he takes into possession

his own child.   The welfare and integrity of family organization, of which the father should be the head, forbids such holding.   We must also bear in mind, while considering this question, that agreements for separation between married couples are not looked upon with favor."

This contract of separation, like the Michigan statute heretofore considered, could in no way control or affect the judgment of a court in decreeing the custody of the child in question. The contract, like the statute, might place the custody of the child in the parent least qualified to properly care for it.   In neither instance is there any assurance that the welfare of the child or the interest of society in its proper instruction and care will be considered.   In other words, the custody agreed upon to suit the convenience of the parties to the contract, or the arbitrary disposition made by the statute, may both be contrary to every principle of justice which would prompt a court, were it decreeing the permanent custody of this child.   The New York court, considering the effect of a contract of this kind, said: "Nor should the agreement as to the custody of the children, made previous to the decree, have a controlling influence upon the decision of the court in such a case.   The object of the statute in giving the court the power to direct which of the parties shall have the care and custody of the minor children, where the father has so conducted himself as to justify either an absolute or a limited severance of the marriage tie, was not to gratify the wishes of the parents.   It was for the protection of the children, who by the misconduct of one parent had necessarily become half orphans.   Besides, it would be a dangerous practice to allow parents to agree between themselves as to the custody of their children, in such a case, previous to a divorce.   It would lead to collusion, in furnishing causes for divorces, if bargains of this kind could be made beforehand which the court was bound absolutely to sanction and carry into effect."   *Cook* v. *Cook,* 1 Barb. Ch. 639, 644.

As decisive of the contention that we should not inquire into the sufficiency of the complaint to charge petitioner with the commission of a crime in the demanding State, counsel for the

government cite the recent case of *Drew* v. *Thaw,* 235 U. S. 432, 59 L. ed. 302, 35 Sup. Ct. Rep. 137, in which it was contended that Thaw, having been adjudged insane in New York, was incapable in law of committing the crime of conspiracy to escape from the insane asylum of that State; but the court held that the question of whether or not Thaw was insane at the moment of conspiracy was one of fact for a New York jury to determine. Disposing of this branch of the case, the court said: "The statute that declares an act done by a lunatic not a crime adds that a person is not excused from criminal liability except upon proof that at the time 'he was laboring under such defect of reason as (1) not to know the nature and quality of the act he was doing; or (2) not to know that the act was wrong.' Penal Law, sec. 1120. See sec. 34. The inmates of lunatic asylums are largely governed, it has been remarked, by appeal to the same motives that govern other men, and it well might be that a man who was insane and dangerous, nevertheless, in many directions understood the nature and quality of his acts as well, and was as open to be affected by the motives of the criminal law as anybody else. How far such considerations shall be taken into account it is for the New York courts to decide, as it is for a New York jury to determine whether at the moment of the conspiracy Thaw was insane in such sense as they may be instructed would make the fact a defense."

Unlike the *Thaw Case,* no question of fact is here involved, —only the question of law, whether, according to the conceded facts, petitioner Hard committed a crime under the laws of Michigan in taking his minor child from the custody of her mother. As we have found, the law is one way. The custody not being under decree of court, no crime was committed; hence, the writ should be granted.

The judgment is reversed, and the cause remanded, with instructions to grant the writ and discharge petitioner from the custody of the marshal.          *Reversed and remanded.*