## Commonwealth v. Chubb

*Edgar B. Bayley, Jr., District Attorney,* for Commonwealth.
*Richard C. Snelbaker,* for defendant.

CALDWELL, *J.,* Twelfth Judicial District, Specially Presiding, November 30, 1977—Defendant was charged with interference with custody of children, under section 2904 of the Crimes Code of December 6, 1972, P. L. 1482, 18 C.P.S.A. § 2904. He was tried on October 14, 1977, in a nonjury proceeding, was found guilty, and has filed a motion in arrest of judgment.

Defendant is the father of Jamie Chubb who was born on December 20, 1974. Prior to the child's birth, defendant and his wife had separated. On June 9, 1975, custody of Jamie was formally awarded in this court to his mother and defendant was given visitation privileges. On December 27, 1975, defendant took the child on a regularly scheduled visitation and did not return him to the mother. The whereabouts of the father and child remained unknown for the next 16 months, until detectives, hired by the mother, located defendant and his child in Florida on May 12, 1977.

The only defense offered by defendant is a statutory one. Subsection (b)(1) of section 2904 of the code provides that: "It is a defense that . . . the actor believed that his action was necessary to preserve the child from danger to its welfare."

Defendant contends that he believed psycholog-

ical, emotional or social damage was being done his one-year-old son because of the "atmosphere" in the mother's family home, and that because of this belief he is not guilty of violating the statute. He argues that the sole remedy of the mother for his actions is a petition for contempt in the custody proceeding.

This is a case of first impression, but we concluded at trial that a dual remedy exists under the facts before us: a criminal charge under the code or a contempt proceeding in the custody case. It is our judgment that the code section was intended to afford a new remedy in a situation such as this and to provide criminal penalties for persons who take the law into their own hands.

Traditionally, our courts have been unwilling to impose criminal penalties upon a parent who removes his child from the possession of the other parent: Commonwealth v. Myers, 146 Pa. 24, 23 Atl. 164 (1892); Burns v. Commonwealth, 129 Pa. 138, 18 Atl. 756 (1889). But a court decree conferring permanent custody will subject an abducting parent to kidnapping charges. See, generally 1 Am. Jur. 2d, Abduction - Kidnapping, § 19, and cases cited therein. The rationale in such cases is that a custody decree divests the parent of certain rights and subjects him to the same liability as a third person: Lee v. People, 127 P. 1023 (1912). No Pennsylvania decision has gone this far, presumably because the primary purpose of kidnapping statutes has been stated to be " . . . to protect parental and other lawful custody of children against the greed and malice of the kidnapper; not to punish their natural guardian for asserting his claim to the possession and control of

them." Burns, supra, at 145. We conclude the legislature determined to change this situation, however, and believe the grading section of the offense confirms our analysis that parents can be subject to criminal penalties under proper circumstances. The offense is graded as a second degree misdemeanor but is raised to first degree where a non-parent is involved and other factors are presented. This clearly indicates to us that parents were intended to be within the scope of the basic offense.

Section 2904 of the code is derived from section 212.4 of the Model Penal Code. The comment of the Joint State Government Commission concerning this section is further support for our determination that the act applies to a parent who defies an existing custody order:

"Although this section is somewhat similar to kidnapping, it is intended to protect parental custody from unlawful interruption, even when the child is a willing participant in the interference with custody. The offender under this section, as distinguished from the kidnapper, may be the parent or relative of the child. Removal of the child for a brief period would not be covered by this section. However, as intimated above, *this section would apply to a parent who wilfully defies a custody order by taking the child from the parent who was awarded custody.*" (Emphasis supplied.)

See Toll - Pa. Crimes Code Annotated, pages 347-48.

We further concluded that the statutory defense contemplates a more imminent or present danger to a child's welfare, and the facts of a particular

situation must warrant interference with custody before there is an opportunity to pursue the usual avenues of redress. In a nutshell, defendant argues that since he believed his child's welfare was endangered, he cannot be convicted. If defendant's position is correct, no one could be convicted of this offense if he simply states that he believed his action was necessary to preserve the child from a "danger to its welfare." We do not believe thi to be a correct analysis of the statute. We conclude that it must be shown that the child's welfare was endangered, or at least that the actor *reasonably* perceived such a danger to the child's welfare.

No such showing was made in this case. Defendant's explanation for taking his son without notice and secreting him in Florida was his apprehension over the long-term psychological damage that he predicted would occur to his son from living in the mother's parents' home. He experienced tension in this home when he would go there to exercise visitation privileges, and he considered his wife and in-laws unsophisticated, uneducated people who were creating a situation which he described as detrimental to the development of his son. The exact nature of the problem to which he referred was never satisfactorily articulated and consisted of his own perceptions of what was harmful. No physical abuse was alleged and no independent testimony was offered to corroborate defendant's notions of psychological harm. Our view of his testimony was that his conclusions were unconvincing, if not unfounded.

Although defendant has no doubt been able to rationalize the seriousness of his act, upon reflec-

tion we must indicate our doubt of his credibility when he stated that he thought his child's emotional welfare was in danger. Our doubt arises from defendant's actions, which belie his experience, education and training. Defendant is a college graduate with a background in guidance and counseling. For six years prior to the offense he served as a probation officer in Cumberland County and well knew the methods by which children can be protected from actual dangers, whether physical or otherwise. Just six months prior to his taking the child he consented to his wife being given legal custody of his son in a formal court proceeding, and did not raise the concerns now being voiced. No later application was made to bring his concerns before the court that had granted custody and his counsel advised him that any such efforts would, in all probability, be unsuccessful. Defendant's solution to the problem, in hiding a child from his mother for a year and one-half, displays his callousness and lack of real concern for anyone but himself, and we view his act as little more than a presumptuous and calculated violation of a custody order and the law, motivated by his self-appointed role as sole judge of his son's future. We find no merit in the defense presented and by an order entered herewith are denying his post-trial motions.

## ORDER

And now, to wit, November 30, 1977, defendant's post-trial motions are denied and he is directed to appear for sentencing at 11:30 a.m. on Monday, December 19, 1977.