Oliver N. Elliott v. Commissioner.
Elliott v. Commissioner
Docket No. 5470-70SC.
United States Tax Court
T.C. Memo 1971-237; 1971 Tax Ct. Memo LEXIS 94; 30 T.C.M. (CCH) 1019; T.C.M. (RIA) 71237; September 16, 1971, Filed. *94 Held, the petitioner failed to show that he contributed over one-half of the total support of his minor child, who was in the custody of the petitioner's former wife for 5 months of the year and in the custody of the county juvenile court for the other 7 months of the year. Oliver N. Elliott, pro se, P.O. Box 451, Sumner, Wash. Eugene H. Flood, for the respondent. *95 SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined a deficiency of $150.00 in the petitioner's 1967 Federal income tax. The issue for decision is whether the petitioner is entitled to a dependency deduction for his son, who was in the custody of the petitioner's former wife for 5 months of 1967 and in the custody of a juvenile court for the other 7 months of the year. Findings of Fact Some of the facts were stipulated, and those facts are so found. The petitioner, Oliver N. Elliott, maintained his residence in Sumner, Washington, at the time the petition was filed in 1020 this case. He filed his 1967 individual Federal income tax return with the district director of internal revenue, Tacoma, Washington. The petitioner was formerly married to Margaret K. Elliott. They were divorced on July 27, 1956, and, under the decree, custody of their minor child, Nelson Craig, born January 23, 1951, was awarded to Mrs. Elliott. The divorce decree also provided that the petitioner pay his former wife $50 per month for the support of his son, but it was silent as to the right of either party to claim a dependency deduction for Federal income *96 tax purposes. Prior to the divorce decree, as part of a community property settlement, the petitioner gave a quitclaim deed to Mrs. Elliott of his interest in a residence and she gave the petitioner a quitclaim deed to other property. During the first 5 months of 1967, the petitioner's son resided with his mother in the residence deeded to her by the pettioner. On or about June 1, 1967, Nelson Craig was remanded to the custody of the King County, Washington, Juvenile Court and placed in a county jevenile home. On August 23, 1967, he was made a ward of the Juvenile Court and placed in the Griffin Home for Boys where he remained until January 18, 1969. The Griffin Home is a privately operated home financed by private donations, contributions from the United Good Neighbors, and payments from both the parents of boys living there, and public welfare agencies. It is not an educational institution and, while living there, Nelson Craig attended public high school. During the year 1967, the petitioner made a total of $600.00 in monthly support payments for his son; the King County, Washington, Welfare Department made payments of $620.25 to the Griffin Home toward the minor's support; *97 and Mrs. Elliott paid $350.00 to the King County Juvenile Court for the support of Nelson Craig. Opinion The issue for decision is whether the petitioner is entitled to a dependency deduction for 1967 for his son, Nelson Craig, who was in the custody of Mrs. Elliott for 5 months of the year and in the custody of the King County Juvenile Court for the other 7 months of the year. There being no evidence of a multiple support agreement, the petitioner, to be entitled to such a deduction, must sustain the burden of proving that he furnished over one-half of his son's total support during 1967. Sec. 152(a), Internal Revenue Code of 1954[1]; sec. 1.152-1(a), Income Tax Regs; Rose D. Seraydar, 50 T.C. 756, 760 (1968); Rule 32, Tax Court Rules of Practice. It should be noted that the special support test of a child of divorced parents does not apply here because Nelson Craig was not in the custody of either parent for over one-half of the year. Sec. 152(e)(1)(B).
The petitioner has failed to sustain his burden of proof. The $620.25 paid by the King County Welfare Department to *98 the Griffin Home should be included as part of the total support of the petitioner's son. It is stipulated that the payments were toward the support of Nelson Craig. The regulations state that support received from "all sources" must be taken into account when computing total support and present the specific example of the inclusion of social security payments. Sec. 1.152-1(a)(2) (i) and (ii), Income Tax Regs. In computing total support, this Court has included payments made by State public assistance agencies which are actually used for support. Eddie L. Carter, 55 T.C. 109 (1970); Allan Cunningham, 22 T.C. 906 (1954). The $620.25, although not paid directly to the petitioner's son, is an amount provided by a State public assistance agency for the minor's support. There is no evidence that the payments were not used for his support. Griffin Home is not an educational institution, and therefore, no part of the support by such institution should be treated as a scholarship and disregarded in computing total support. Secs. 151(e)(4), 152(d). Compare Rev. Rul. 64-221, 1964-2 C.B. 46; Rev. Rul. 61-186, 1961-2 C.B. 30; Rev. Rul. 60-190, 1960-1 C.B. 51. *99 The petitioner's claim that he contributed to a charitable agency which helped to support Griffin Home is of no avail as he neither proved the amount of such contribution nor that the contribution was conditioned on Griffin Home supporting his son. See Warren C. Mawhinney, 43 T.C. 443 (1965), affd. per curiam 355 F. 2d 462 (C.A. 3, 1966). Including the $620.25 paid by the King County Welfare Department in Nelson Craig's total support, together with the $350 1021 contributed by his mother in the last 7 months of 1967, results in a figure of $970.25, substantially more than the $600 contributed by the petitioner in monthly support payments. The petitioner, however, contends that in addition to the monthly support payments, his contribution to Nelson Craig's support includes the furnishing of a residence to his son during the first 5 months of 1967. The residence is the one that the petitioner deeded to Mrs. Elliott as part of the 1956 community property settlement. Besides the petitioner's own testimony that he deeded the house for the support of Nelson Craig, there is no other evidence that this was the purpose of the property settlement. Rather, the *100 settlement appears to be an exchange in which Mrs. Elliott gave up her right to certain community property and received title to the residence. Since Mrs. Elliott had the right to possession and title to the residence in 1967, the petitioner is not entitled to consider the value of Nelson Craig's lodging during the first 5 months of the year as a contribution by him to support. See i2 Delbert D. Bruner, 39 T.C. 534 (1962). See also Eva L. Lindberg, 46 T.C. 243, 247 (1966); Wood v. United States, 287 F. Supp. 90 (D. Ore. 1968). Even if the petitioner's testimony were fully accepted and even if the petitioner were considered to have provided his son with the lodging in question, the petitioner would not be entitled to a dependency deduction for Nelson Craig. The petitioner testified that he believed that the rental value of the residence was $100 per month. There were two people, Mrs. Elliott and Nelson Craig, living at the residence, and not more than one-half of the alleged rental value, or $50 per month, should be attributed to the cost of providing lodging for Nelson Craig. See Eddie L. Carter, supra; Rev. Rul. 64-222, 1964-2 C.B. 47. *101 Thus, the cost of his son's lodging for the first 5 months of 1967 was $250. Even if such lodging is considered to have been provided by the petitioner, his total contribution is still only $850.00 as compared to a contribution of at least $970.25 by Mrs. Elliott and the welfare department. Decision will be entered for the respondent. Footnotes
1. All statuory references are to the Internal Revenue Code of 1954.↩