WARREN C. MAWHINNEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93767.   Filed January 18, 1965.

*William Pettit*, for the petitioner.
*Gerald Backer*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in petitioner's income tax of $200.53 for the taxable year 1959. Petitioner conceded one issue raised in the notice of deficiency. We are asked only to decide whether petitioner furnished more than one-half of the support of his son Matthew in 1959 so as to qualify him as a dependent under section 152(a)(1) of the Internal Revenue Code of 1954.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Warren C. Mawhinney (hereafter called petitioner) now resides at 5501 Columbo Street, Pittsburgh, Pa. He filed his 1959 income tax return with the district director of internal revenue, Pittsburgh, Pa.

During 1958 petitioner lived in Reading, Pa., with his wife, Elizabeth, and his son, Michael, by a previous marriage. On October 22, 1958, Elizabeth gave birth to a son, Matthew. Because of marital difficulties, Elizabeth left petitioner on December 18, 1958, and took Matthew with her. She moved into the home of her sister and brother-in-law, J. Karl and Ellen Roeder, at 5009 Friendship Avenue, Pittsburgh, Pa., who had occupied the house alone. Elizabeth and Matthew resided with the Roeders throughout 1959.

During 1959 petitioner drew checks payable to Elizabeth in the following amounts on the dates indicated:

| | |
|---|---:|
| Feb. 14 | $25 |
| Feb. 28 | 25 |
| Mar. 15 | 25 |
| Mar. 28 | 25 |
| Apr. 24 | 25 |
| May 10 | 25 |
| June 15 | 25 |
| Sept. 9 | 5 |
| Sept. 26 | 15 |
| Oct. 4 | 10 |
| Oct. 27 | 15 |
| Nov. 6 | 15 |
| Nov. 14 | 15 |
| Total | 250 |

The first 10 checks were drawn before petitioner was under any court order to provide for either his wife or son. On October 5, 1959, the Court of Common Pleas of Allegheny County, Pa., ordered petitioner to pay alimony of $15 a week to Elizabeth. Petitioner intended all 13 payments to be for the support of his son. Except for small expenditures on herself, Elizabeth did spend these sums for Matthew's support in 1959.

On November 19, 1959, the Domestic Relations Court of Allegheny

County, Pa., ordered petitioner to pay $15 a week for Matthew's support. During the remainder of 1959, $90 was paid pursuant to such order.

During 1959 petitioner paid $159.20 for medical and hospitalization insurance. Four individuals were covered by this policy: Petitioner, Elizabeth, and petitioner's sons, Michael and Matthew. In 1959 only Matthew received benefits from this policy.

Petitioner gave his wife $35 in cash for Matthew's support during 1959, as well as a check for $72.60 from the U.S. Treasury Department representing a refund of 1958 joint income taxes paid by them.

Petitioner paid doctor bills of $20 that were not covered by medical insurance. He purchased medicine for Matthew during the year at a cost of $10. He also provided a Christmas tree and presents for Matthew at a cost of $5.

The following items were provided by petitioner for Matthew's support in 1959:

| | |
|---|---|
| Checks drawn to Elizabeth Mawhinney | $250.00 |
| Child-support payments per court order | 90.00 |
| Cash paid to Elizabeth Mawhinney | 35.00 |
| One-half of tax refund check given to Elizabeth Mawhinney | 36.30 |
| Insurance coverage (¼ of $159.20) | 39.80 |
| Medical fees | 20.00 |
| Medicine, Christmas tree, and presents | 15.00 |
| Total | 486.10 |

Matthew lived in the Roeders' home throughout 1959, sharing a bedroom with his mother. The following expenditures were incurred in maintaining the home:

| | |
|---|---|
| Rent | $980.00 |
| Electricity | 81.51 |
| Gas | 190.41 |
| Telephone | 163.21 |

The following expenditures were made by the Roeders and Elizabeth Mawhinney for Matthew in 1959:

| | |
|---|---|
| Food | $283.64 |
| Milk | 90.00 |
| Medicines | 73.13 |
| Medical fees | 48.00 |
| Clothes, toys, and furniture | 222.55 |
| Diaper service | 151.62 |

Matthew's total support for 1959 was as follows:

| | |
|---|---|
| Food | $283.64 |
| Rent (¼ of $980) | 245.00 |
| Clothing, furniture, and toys | 217.55 |
| Diaper service | 151.62 |
| Milk | 90.00 |
| Medicine | 83.13 |
| Medical fees | 68.00 |

| | |
|---|---:|
| Gas (¼ of $190.41) | $47.60 |
| Health insurance (¼ of $159.20) | 39.80 |
| Electricity (¼ of $81.51) | 20.38 |
| Telephone (¹⁄₁₀ of $163.21) | 16.32 |
| Total | 1,268.04 |

Petitioner did not provide more than one-half of Matthew's total support during the year 1959.

### OPINION

Petitioner claimed his son Matthew as a dependent for the year 1959. Respondent disallowed the exemption. He contends that petitioner did not meet the statutory requirement of providing more than one-half of Matthew's support.[1] We have found that the total support provided for Matthew in 1959 was $1,268.04. We have also found that petitioner provided only $486.10 of this total, and he has thus failed to meet the requirements of the statute.

Petitioner argues that the $373.64 expended for Matthew's food and milk is excessive. These expenditures were established by Elizabeth, who actually fed Matthew during the year. They are explained in detail by her testimony and are supported by schedules. Even if we were to use the amount ($206.60) suggested by petitioner for food and milk expenses, which is based on U.S. Department of Agriculture statistics, the resulting decrease in Matthew's total support would not change the result.

The petitioner objects to including any portion of the sums spent by his wife and the Roeders for Matthew's housing and clothing because, he argues, they were not "necessaries." He testified that throughout 1959 he maintained a home and had adequate clothing on hand, but was prevented from giving them to Matthew because Elizabeth insisted upon living with her sister and brother-in-law. Regardless of petitioner's willingness to have his son in his own home during 1959, Matthew was housed and clothed elsewhere, and these expenses constitute part of his total support.

Petitioner has presented a bizarre argument throughout these proceedings which we think is without any merit. However, since he urged it repeatedly during the trial and in his brief, we feel constrained to comment on it. Under Pennsylvania law both of the parents of a minor child have equal custody rights.[2] Because Elizabeth took Matthew from petitioner's home without his consent, he maintains that this is a violation of the following Pennsylvania statute:

---

[1] SEC. 152 [I.R.C. 1954]. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer) :

(1) A son or daughter of the taxpayer, or a descendant of either.

[2] Pa. Stat. Ann., tit. 48, sec. 91 ; 28 Pa. L. Encyc. 250 ; *O'Brien* v. *City of Philadelphia*, 215 Pa. 407, 64 Atl. 551 (1906).

KIDNAPPING CHILD FROM PERSONS HAVING CUSTODY—Whoever maliciously, either by force or fraud, leads, takes, or carries away, or decoys or entices away, any child, under the age of ten (10) years, from its parent, or parents, or any other person having the lawful charge or care of such child, or the possession of such child, with intent to conceal or detain such child, or with intent to steal any article of apparel or ornament or other thing of value or use, upon or about the person of such child, or knowingly conceals, harbors or detains, or assists in concealing, harboring or detaining, such child, either within or without this Commonwealth, is guilty of a felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding five thousand dollars ($5,000), or to undergo an imprisonment, by separate or solitary confinement at labor, not exceeding fifteen (15) years, or both.
[Pa. Stat. Ann., tit. 48, sec. 4725.]

Thus petitioner asks us to find Elizabeth and the Roeders guilty of the felony described in the above-quoted statute and not allow her or the Roeders to claim Matthew as a dependent in 1959, under the authority of *Leon Turnipseed*, 27 T.C. 758 (1957).

In the *Turnipseed* case we held that a taxpayer could not claim an exemption for the support of a common law wife who lived in adulterous cohabitation with him in direct and open violation of Alabama law. We fail to see any application of that case to the facts before us here.

Petitioner does not dispute the fact that his wife had an equal right to the custody of Matthew. The fact that she assumed total custody without petitioner's consent certainly does not result in kidnaping. Pennsylvania follows the well-established rule that, in the absence of a court order or decree affecting the custody of a child, a parent, or anyone assisting such parent, does not commit the crime of kidnaping by taking exclusive possession of the child. *Burns* v. *Commonwealth*, 129 Pa. 138, 18 Atl. 756 (Super. Ct. 1889); *Commonwealth* v. *Myers*, 146 Pa. 24, 23 Atl. 164 (Super. Ct. 1892); and see also 77 A.L.R. 314–323. Here there has been no violation of State law such as that found in *Turnipseed*. Petitioner curiously contends that the *part* of the cost of supporting a dependent in violation of State law is to be excluded in determining the *total* support provided. A careful reading of *Turnipseed* and the statute refutes this contention.

In any event, petitioner cannot meet the requirements of section 152(a) by merely showing that someone else is not entitled to the exemption he is claiming. He must show that he has provided more than one-half of Matthew's support, whatever its source. The Roeders and Elizabeth Mawhinney are not before us in this proceeding. Consequently, we have no jurisdiction to decide, as petitioner urges us to do, whether or not the Roeders or Elizabeth can claim Matthew as a dependent.

In view of the evidence presented, we hold against the petitioner.

*Decision will be entered for the respondent.*