*Decision will be entered for the respondent.*

FRANK AND RUTH MCGUIRE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4735–80.     Filed October 7, 1981.

---

Frank and Ruth McGuire, pro se.
*Frank R. DeSantis*, for the respondent.

NIMS, *Judge*: Respondent determined deficiencies in petitioners' income tax for the years 1977 and 1978, in the respective amounts of $457 and $170.[1] Concessions having been made by the petitioners, the issues remaining for decision are: (1) Whether petitioners are entitled to a dependency exemption for the support of Robert McGuire in the year 1977; and (2) whether petitioners are entitled to deductions in 1977 and 1978 for depreciation and remodeling expenses for an unfinished rental unit which the petitioners never rented and never held out for rent.

## FINDINGS OF FACT

### Dependency Exemption

Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by reference.

Petitioners resided in Poland, Ohio, at the time the petition in this case was filed.

Petitioner Frank McGuire was married to Rose McGuire on May 15, 1950. Two children, James and Robert, were born of this marriage. On May 26, 1972, Frank McGuire and Rose McGuire were divorced. The divorce decree provided custody of the children to Rose McGuire and obligated Frank McGuire to pay Rose McGuire $100 per month per child in child

---

[1]In the petition, petitioners asserted that the amount of the deficiency which they disputed was $473 and $195 for 1977 and 1978, respectively. No explanation for the discrepancy from the statutory notice of deficiency, dated Feb. 13, 1980, is provided, and petitioners introduced no evidence to show that they contested more than the amounts listed in the deficiency notice. Consequently, the amounts in controversy for this case are the amounts listed in the deficiency notice.

support. The decree was silent as to who was entitled to claim the children as dependents for Federal income tax purposes.

During 1977, Robert McGuire lived with Rose McGuire. Robert was age 16 during 1977.

In 1972, petitioner Frank McGuire married petitioner Ruth McGuire.

Petitioners paid a total of $1,260 for the support of Robert during 1977, as follows:

| | |
|---|---|
| (1) Child support payments to Rose McGuire | $1,080.00 |
| (2) Health insurance premiums applicable to Robert | 180.00 |
| Total | 1,260.00 |

During 1977, Rose McGuire made the following payments for the support of Robert:

| | |
|---|---|
| Lodging | $1,000.00 |
| Food | 600.00 |
| Real property taxes | 75.91 |
| Electricity | 113.14 |
| Natural gas | 126.49 |
| Water | 35.16 |
| Telephone | 71.40 |
| Home insurance | 35.33 |
| Clothing | 86.76 |
| Parochial school | 483.00 |
| Tools (gift) | 46.00 |
| Accident claim | 125.00 |
| Car insurance | 352.00 |
| Total: | 3,150.19 |

Other sources for the support of Robert during 1977 included:

| | |
|---|---|
| Automobile payments[2] | $818.00 |
| Robert's earnings | 1,300.00 |
| Total: | 2,118.00 |

Robert was injured in an automobile accident during 1977. Medical expenses in the amount of $1,583 were incurred as a result of the accident. An insurer paid these expenses pursu-

---

[2]These amounts were provided by Robert's aunts or by his mother, Rose McGuire. Due to our conclusions, *infra,* we do not have to decide who made these payments.

ant to a health insurance plan purchased by petitioner Frank McGuire.

### Unfinished Rental Unit Deductions

Petitioners owned a house located at 7157 Youngstown-Pittsburgh Road, Poland, Ohio. They extensively renovated portions of the house during 1976 and 1977 with the expectation that they would rent the second floor as a separate living unit. Petitioners did not complete the renovation due to a lack of funds. The property was not rented or held out for rent from 1972 through July 1, 1980. Petitioners had no rental income during 1977 and 1978.

On audit, the Commissioner's agent told the petitioners that they were entitled to certain deductions concerning the house at 7157 Youngstown-Pittsburgh Road. The agent assisted the petitioners in the completion of the forms necessary to claim the deductions for the years 1977 and 1978.

Petitioners assert that they are entitled to a rental loss deduction of $1,008.42 for 1977. This loss is based on zero gross income from rental activity less a $382 depreciation claim and a $626.42 remodeling expenses claim. Petitioners also assert that they are entitled to a rental loss deduction of $382 for 1978. This loss is based on zero gross income from rental activities less a $382 depreciation claim.

Respondent disallowed these deductions in a statutory notice of deficiency dated February 13, 1980.

### OPINION

### Issue 1. Dependency Exemption

Section 151(e)(1)(B)[3] permits a taxpayer to claim a dependency exemption for each dependent who is a child of the taxpayer and is under the age of 19. As a general rule, a child is a dependent of a taxpayer if the taxpayer furnishes more than one-half of the child's support. Sec. 152(a). However, special rules apply to children of parents who are divorced, legally separated under a decree of divorce or separate maintenance,

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect during the years in question. Similarly, unless otherwise indicated, all references to Rules are to the Tax Court Rules of Practice and Procedure.

or separated under a written separation agreement. Sec. 152(e).[4]

Section 152(e)(1) provides that the parent who has custody of the child for the greater portion of the year is entitled to the dependency exemption. There are two exceptions to this general rule, pursuant to which the parent not having custody is entitled to the exemption. The first of these exceptions grants the exemption to the parent not having custody if the decree of divorce or separate maintenance or a written agreement between the parents specifies that the noncustodial parent is entitled to the exemption, and if the noncustodial parent has contributed at least $600 to the support of the child during the year. Sec. 152(e)(2)(A).

The second exception provides that the noncustodial parent is entitled to the exemption if he contributes $1,200 or more to the support of the child for the tax year in question and if the

---

[4]The text of the relevant portions of sec. 152(e) is as follows:

SEC. 152(e). SUPPORT TEST IN CASE OF CHILD OF DIVORCED PARENTS, ET CETERA.—

(1) GENERAL RULE.—If—

(A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,

such child shall be treated, for purposes of subsection' (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody).

(2) SPECIAL RULE.—The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if—

(A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and

(ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or

(B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for each of such children) for the calendar year, and

(ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody.

For the purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support.

custodial parent does not clearly establish that the custodial parent provided more support during the year than did the noncustodial parent. Sec. 152(e)(2)(B). The words "clearly establish" impose a burden of proof on the custodial parent to demonstrate support contributions by a clear preponderance of the evidence. It does not impose the clear and convincing standard of proof. Sec. 1.152–4(d)(3), Income Tax Regs. See also *Labay v. Commissioner*, 55 T.C. 6 (1970), affd. per curiam 450 F.2d 280 (5th Cir. 1971). When, as here, the custodial spouse is not a party to the Tax Court proceedings, the burden falls upon the respondent to overcome the presumption favoring the noncustodial parent after the noncustodial parent demonstrates a $1,200 support contribution. *Labay v. Commissioner, supra* at 11.

The divorce decree which dissolved the marriage of Frank and Rose McGuire did not state who was entitled to claim the children as dependents for Federal income tax purposes. At trial, petitioner Frank McGuire alledged that Rose and he had made an oral agreement that he would get the dependency exemptions. Even if this evidence is accepted as true, an oral agreement would not help the petitioner. Section 152(e)(2)(A)(i) requires that a written agreement between the parents is necessary to effectively allocate a dependency exemption. See also *Sheeley v. Commissioner*, 59 T.C. 531 (1973). Therefore, petitioners must satisfy the requirements of section 152(e)(2)(B) to be entitled to the dependency exemption for Robert during 1977.[5]

### Requirements of Section 152(e)(2)(B)(i)

Initially, petitioners must demonstrate that they provided $1,200 or more for Robert's 1977 support. Petitioners assert that they provided three types of support for Robert during 1977: (1) Support payments made to Rose McGuire; (2) health insurance premiums and proceeds paid for Robert's benefit

---

[5]Petitioners clearly satisfy all other requirements of secs. 151–152 to be entitled to the dependency exemption. Robert is the child of petitioner Frank McGuire, as required by sec. 151(e)(1)(B). Robert received over half of his support during 1977 from his parents as required by sec. 152(e)(1)(A): Robert's total support in 1977 was $5,268.19; Frank and Rose McGuire provided $3,330.19 of Robert's support, or 60 percent of the total. Petitioner Frank McGuire and Rose McGuire were divorced on May 26, 1972, as required by sec. 152(e)(1)(A). Robert was in the custody of his mother, Rose McGuire, for more than one-half of 1977, as required by sec. 152(e)(1)(B).

during 1977; and (3) Robert's lodging for 1977. These support contributions will be discussed separately.

*Support Payments to Rose McGuire*

The parties stipulated that petitioner Frank McGuire paid Rose McGuire $765 in support payments for Robert during 1977. Canceled checks which were introduced into evidence demonstrate that these payments were made periodically from June 1 to December 31 of that year. At trial, Frank McGuire testified that he paid Rose McGuire an additional $315 for Robert's support during the first part of 1977. He claimed that the checks which would substantiate this additional amount were lost when his house was remodeled. We think that the evidence of 7 months of conscientious payment during the latter part of 1977 supports the inference that Frank McGuire made support payments to Rose McGuire earlier in the year. Also, our opportunity to view petitioner's testimony convinced us that he was a credible witness and that this testimony should be accepted as true. Consequently, we find that petitioner made payments to Rose McGuire for the support of Robert in the amount of $1,080 during 1977.

*Insurance Premiums and Insurance Proceeds*

Robert McGuire suffered injuries as a result of a 1977 automobile accident. During 1977, an insurance company paid $1,583 for Robert's medical expenses resulting from the accident. Petitioner Frank McGuire provided the insurance coverage. At trial, Frank McGuire testified that he paid health insurance premiums of $180 during 1977 to cover Robert under the health plan. Although the amounts of the premium payments were not substantiated, our opportunity to view petitioner's testimony convinced us that he was a credible witness and that this evidence should be accepted as true.

Petitioners claim that the full amount of the insurance proceeds which paid Robert's medical bills in 1977, as well as the premiums paid for the insurance, is "support" provided by the petitioners to Robert during 1977.

Although several of our decisions hold that health insurance premiums properly may be included in the section 152 support calculation,[6] no cases have reached our attention in which we

---

[6]See *Mawhinney v. Commissioner*, 43 T.C. 443 (1965); *Hahn v. Commissioner*, 22 T.C. 212 (1954); *Ginsberg v. Commissioner*, T.C. Memo. 1981–483; *Taitt v. Commissioner*, T.C. Memo.

have squarely dealt with the question of whether health insurance proceeds should be included in the computation.[7]

In Rev. Rul. 64–223, 1964–2 C.B. 50, the Commissioner ruled that the amount spent on premiums for health insurance covering a dependent is properly included in the computation of support of that dependent. The ruling also held that proceeds received pursuant to the health insurance may not be included in the support computation. The Commissioner reached the result on the basis of an analysis of section 213(e) and section 152. Medical care is an item of support for purposes of the section 152 calculation. Sec. 1.152–1(a)(2)(i), Income Tax Regs. Section 213(a) states that premiums for health and accident insurance constitute medical care. The Commissioner found the section 213(e) analogy determinative and the ruling held that health or accident insurance premiums should constitute a payment for support of a dependent for section 152 purposes. The ruling also held that proceeds of health or accident insurance should not be included in the support computation because "to include both premiums and benefits in support would in essence be duplication and * * * the cost of the insurance is the proper amount to be included." Rev. Rul. 64–223, *supra*, 1964–2 C.B. at 51. Respondent's rulings do not bind us. See *Stubbs, Overbeck & Associates v. United States*, 445 F.2d 1142, 1146–1147 (5th Cir. 1971). Nonetheless, we agree with the Commissioner's conclusions in Rev. Rul. 64–223, although we do not agree with the analysis contained therein. See note 10 *infra*.

In *Samples v. United States*, 226 F. Supp. 115 (N.D. Ga. 1963), appeal dismissed (5th Cir., June 5, 1964), the court held that proceeds provided by a third-party insurer pursuant to a health insurance plan must be included in the section 152

1978–264; *Mora v. Commissioner*, T.C. Memo. 1964–122; *Parker v. Commissioner*, T.C. Memo. 1959–182; *Lopez v. Commissioner*, T.C. Memo. 1959–9.

[7] In *Turecamo v. Commissioner*, 64 T.C. 720 (1975), affd. 554 F.2d 564 (2d Cir. 1977), we considered a closely related issue. In that case, we noted that we did not have to decide the issue which is before us today. 64 T.C. at 728 ("Since respondent clearly concedes that part B or private insurance payments are not includable in determining the support furnished to an individual and we conclude that there is no proper basis for distinguishing these payments from payments made under part A of Medicare, we will not consider whether all such payments should be included as part of an individual's support.").

support computation. The Court held that the proceeds should be included in the support computation because the proceeds assisted in providing the dependent's "total needs" during the year in question.

In *Mawhinney v. Commissioner*, 355 F.2d 462 (3d Cir. 1966), affg. 43 T.C. 443 (1965), the petitioners argued to the appellate court that the health insurance proceeds received for the benefit of the dependent should be included in the support computation. The third circuit found petitioner's argument to be "completely without merit." 355 F.2d at 462.

In determining whether health insurance premiums or proceeds, or both, should be included in the section 152 support computation, we note that medical expenses incurred for the dependent's benefit constitute an element of support. The regulations define support to include "food, shelter, clothing, medical and dental care, education, and the like." Sec. 1.152–1(a)(2)(i), Income Tax Regs. Thus, if Robert McGuire had not been covered by an insurance plan and petitioners had paid Robert's medical expenses during 1977, then such amounts would be credited to petitioners as a contribution to Robert's support.

Petitioners, however, did not pay the $1,583 in medical expenses. They paid $180 to a third party to obligate it to pay Robert's health expenses in 1977. Petitioners argue that they should be credited with the amount of the insurance proceeds in the section 152 support computation because they secured the insurance coverage. This argument has a certain amount of force. Robert required $1,583 in medical care during 1977. Petitioners ensured that such amounts would be paid during 1977 by securing the health insurance coverage. Petitioners thus could be interpreted to have provided $1,583 in support by purchasing the health insurance. See *Samples v. United States, supra.* We disagree with petitioners.

Initially, we note that petitioners cannot be credited with both premium payments and proceeds in the section 152 support computation. At most, petitioners could be credited with the medical expenses paid during 1977: allowing the premiums in addition to the proceeds would constitute an erroneous duplication because petitioners would then be credited with providing more support than the value of benefits actually received by Robert. See Rev. Rul. 64–223,

*supra*, 1964–2 C.B. at 50–51. See also *Archer v. Commissioner*, 73 T.C. 963, 975–976 (1980) (Reviewed by the Court) (Nims, J., dissenting) ("Medical payments have been excluded from the support computation when their inclusion would potentially duplicate premium payments.").

We hold that premiums paid for health insurance, not proceeds received from insurance coverage, are the proper amounts to be included in the section 152 support computation. Congress, in designing the dependency exemption, intended that taxpayers have tax-free income to pay for (at least a portion of) support expenses.[8] This focus on the taxpayer's expenses in satisfying support obligations implies that the cost of support items to the taxpayer, rather than the value of the benefit to the dependent, should be used in the section 152 support computation.

The design of the dependency exemption requires inclusion of the health insurance premiums and exclusion of the health insurance proceeds in the support computation. Petitioners contributed to Robert's 1977 medical care by securing health insurance. Due to the nature of insurance, they provided for $1,583 of Robert's 1977 medical expenses by paying $180 in premiums.[9] Amounts received by the dependent as proceeds of

---

[8]Personal exemptions have been present in the Internal Revenue Code since 1913. During the congressional debate on the income tax, Representative Palmer of Pennsylvania explained that the exemptions were designed—

"to leave free and untaxed as a part of the income of every American citizen a sufficient amount to rear and support his family according to the American standard and to educate his children in the best manner which the educational system of the country affords. [50 Cong. Rec. 1250 (1913).]"

See generally Note, "A Proposed Flexible Personal Exemption for the Federal Income Tax," 18 Stan. L. Rev. 1162, 1162–1166 (1966) (identifies four functions of the personal exemptions: (1) Administrative convenience by keeping down the number of returns filed; (2) tax-free subsistence income; (3) lower tax liability for taxpayers with larger families who have larger support-oriented expenses; and (4) smooth graduation of effective tax rates at the lower end of the income scale).

[9]Purchasing health insurance provides a way of satisfying health care needs by paying a premium rather than by paying medical expenses as they arise. Insurance spreads the health care costs of the individuals covered by the plan across the entire subscription group. In effect, each person participating in a health plan exchanges the chance that he may incur health care costs for the certainty that he will pay his portion of the group's health costs. Individuals are willing to share this burden to avoid the risk of a crushing medical expenditure. Paying insurance premiums thus provides an alternative to paying medical costs as they arise. Given this nature of insurance it is sensible to include the premium and to exclude the proceeds in a support computation. See *Turecamo v. Commissioner*, 64 T.C. 720, 730 n. 1 (1975) (Wilbur, J., concurring):

a health insurance plan ($1,583 in this case) should be excluded from the support computation because the taxpayer did not pay these proceeds from his own pocket. The only expense taxpayer pays in this situation is the cost of the premiums ($180 in this case). Because section 152 is concerned with the cost to the taxpayer rather than the value of the benefit to the dependent, health insurance premiums should be included in the support computation and health insurance proceeds should be excluded from the calculation.[10]

Consequently, we hold that petitioners contributed $180 to Robert's support by making the premium payments on health insurance.

*Lodging*

Petitioners claim that they provided Robert's lodging in 1977. Robert lived with his mother, Rose McGuire, in the house located at 928 East Philadelphia Ave., Youngstown, Ohio, during 1977. Petitioners argue that they should be credited in the section 152(e)(2)(B) support computation with providing Robert's lodging for 1977 because Frank McGuire purchased the house and its furnishings with money he claims to have earned prior to 1977.

Pursuant to the divorce decree of May 26, 1972, Frank McGuire transferred by quitclaim deed to Rose McGuire all of his interest in the house. At trial, petitioner Frank McGuire conceded that Rose McGuire had the exclusive rights to use and possession of the house and its furnishings during the year 1977.

We hold that petitioners did not provide Robert's lodging during 1977. For purposes of the section 152 support computation, the parent who has sole right to possession and use of the

---

"No prudent man with the means and opportunity to acquire health insurance will fail to do so with the enormous costs of health care today. The average man looks at his health costs as his insurance premiums plus his unreimbursed payments for health care, which accords with the economic realities (and the amount deductible as a medical expense). Viewing large third-party payments (made when the contingency insured against occurs) as support can be viewed as distorting the economic realities."

See also *Turecamo v. Commissioner*, 554 F.2d 564, 576 (2d Cir. 1977).

[10]Due to our holding, we do not have to consider whether sec. 213(e) compels the same results as argued by the respondent in Rev. Rul. 64–223, 1964–2 C.B. 50. We note, however, that in *Turecamo v. Commissioner, supra*, we said that "there is no necessary correlation between section 213 and sections 151 and 152." 64 T.C. at 728.

house and its furnishings is considered to be the parent who provides the lodging for the child, even if the other parent provided the funds to purchase the house and the furnishings. *Bruner v. Commissioner*, 39 T.C. 534 (1962); *Klofta v. United States*, 333 F. Supp. 781 (N.D. Ohio 1970); *Wood v. United States*, 287 F. Supp. 90 (D. Ore. 1968). See also *Lindberg v. Commissioner*, 46 T.C. 243, 247 (1966).

Because petitioners conceded that Rose McGuire had sole possession and right to use the house and furnishings during 1977, it is Rose McGuire, not petitioner, who is credited with supplying lodging for Robert during 1977.

*Petitioner's Support for Robert*

We find that petitioners provided $1,080 in child support payments to Rose McGuire and $180 in health insurance premiums which total $1,260 in support payments for Robert during 1977. Petitioners, therefore, satisfy the requirements of section 152(e)(2)(B)(i).

### Requirements of Section 152(e)(2)(B)(ii)

Because petitioners demonstrated that they provided more than $1,200 in support for Robert in 1977, the burden shifts to respondent to establish by a clear preponderance that Rose McGuire provided more than petitioner for Robert's support during 1977. *Labay v. Commissioner, supra.*

Rose McGuire provided several items for the support of Robert during 1977.

Rose McGuire had exclusive rights to the possession and use of the house and furnishings which provided the home in which Robert lived during 1977. Accordingly, we find that Rose provided Robert's lodging during that year. *Bruner v. Commissioner, supra; Klofta v. United States, supra; Wood v. United States, supra.* Rose is credited with the fair market value of the lodging provided. Sec. 1.152–1(a)(2)(i), Income Tax Regs. *Blarek v. Commissioner*, 23 T.C. 1037 (1955); *Haynes v. Commissioner*, 23 T.C. 1046 (1955).

At trial, Rose McGuire testified that the fair rental value of the house without utilities was $3,000 for the year 1977. This value seems reasonable given the circumstances developed at trial and it is accepted as true. A pro rata allocation of the rental value among the residents is applied unless petitioner

demonstrates that such allocation would be unreasonable under the circumstances.[11] Petitioner failed to introduce evidence that a pro rata allocation would be unreasonable in this case. Robert lived with his mother, Rose, and his brother, James, during 1977. Consequently, we find that the value of the lodging provided by Rose McGuire to Robert in 1977 is $1,000.

The parties stipulated that Rose McGuire paid $1,372.29 in 1977 for several items of Robert's support. These items included real property taxes, electricity, natural gas, water, telephone, and home insurance. A detailed description of these expenses is provided in the findings of fact. Robert's share of these expenses for the year 1977 is $457.43.

Rose McGuire paid $2,400 in food bills during 1977. Four people ate in Rose's household that year. Consequently, Robert's share of the food expenditures is $600.

Rose McGuire made the following additional expenditures for Robert's support during 1977: clothing, $86.76; parochial school, $483.00; gift of tools, $46.00; payment of accident claim, $125.00; and automobile insurance premiums, $352.00.

At trial, Rose McGuire testified that she gave Robert $818 for the purchase of three automobiles. This testimony was questioned at trial and in the briefs. We do not have to decide whether Rose McGuire did in fact make these expenditures because respondent clearly demonstrated that Rose McGuire contributed more than Frank McGuire to Robert's support without these disputed amounts.

We have found that respondent clearly demonstrated that Rose McGuire made support expenditures for Robert at least in the amount of $3,150.19 during 1977. Rose McGuire received $1,080 in support payments from Frank during 1977. Consequently, Rose McGuire contributed $2,070.19 for Robert's support during 1977. See sec. 1.152–4(d)(4), Income Tax Regs.

Because Rose McGuire contributed more for Robert's support ($2,070.19) than Frank McGuire ($1,260), we hold that Frank McGuire is not entitled to the dependency exemption for Robert in the tax year 1977. Sec. 152(e)(2)(B)(ii).

---

[11]See *Cameron v. Commissioner*, T.C. Memo. 1974–166.

## Issue 2. Rental Property Deductions

During 1976 and 1977, petitioners made extensive renovations to the house at 7157 Youngstown-Pittsburgh Road. Petitioners hoped to rent the second floor as a separate living unit. Petitioners, however, ran out of money before they finished the remodeling job. It has been stipulated that petitioners never rented, or held out for rent, the second floor. Petitioners introduced no evidence that they rented other residential units. Accordingly, we find that petitioners had no rental income during 1977 or 1978.

Petitioners claimed a rental loss for the years 1977 and 1978 due to asserted depreciation and expense deductions allocable to the second story. Respondent maintains that petitioners' "rental activity" was an activity not engaged in for profit and that the depreciation and expenses, therefore, are deductible only to the extent allowed under section 183. We agree with respondent.

Ordinary and necessary expenses and depreciation attributable to an activity not engaged in for profit are deductible only to the extent of gross income derived from such activity. Sec. 183(b). Petitioners had no gross income from the rental activity during the years in issue. Therefore, if the activity was not engaged in for profit, then petitioners' claims on this issue must be denied.

Section 183(c) defines an activity not engaged in for profit as an activity for which deductions under sections 162 and 212(1) and (2) are not allowable. Petitioners' activity with respect to the second floor of the house fails this test. Petitioners did not introduce evidence to show that they were engaged in the trade or business of renting residential units. Petitioners' activity with respect to the property in issue does not constitute a trade or business because they never rented the property or held it out for rent. *Goodwin v. Commissioner*, 75 T.C. 424 (1980) (taxpayer not engaged in trade or business prior to completion of rental units).

Similarly, the failure to rent the unit, or to hold it out for rent, indicates that the property was not held for the production or collection of income. *Melone v. Commissioner*, 45 T.C. 501 (1966); *Leslie v. Commissioner*, 6 T.C. 488 (1946). Because petitioners' "rental activity" is an activity for which deductions under sections 162 and 212 (1) and (2) are not allowable,

this activity was not engaged in for profit. Sec. 183(c). Consequently, the depreciation and expense deductions claimed by petitioners cannot be allowed. Sec. 183(b).

Petitioners argue that respondent should be estopped from denying these deductions. On audit, the agent from the Internal Revenue Service told petitioners that they could take the depreciation and expense deductions. The agent helped the petitioners fill out the appropriate forms to claim these deductions for 1977 and 1978.

We have held that estoppel will be applied against the Commissioner only in rare cases. *Estate of Emerson v. Commissioner*, 67 T.C. 612, 617–618 (1977). In *Underwood v. Commissioner*, 63 T.C. 468 (1975), affd. 535 F.2d 309 (5th Cir. 1976), we said:

To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed. [63 T.C. at 477–478.]

See also *Dixon v. United States*, 381 U.S. 68 (1965); *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180 (1957).

In this case, respondent's employee made an error of law. The employee thought that the petitioners were entitled to claim the depreciation and the expense deductions. The law does not permit such deductions in this case. Where an error of law is involved, estoppel will rarely be applied against the respondent. In *Estate of Emerson v. Commissioner*, *supra* at 618, we said:

While there are exceptions to the general proposition that the estoppel doctrine is inapplicable to prevent respondent from correcting a mistake of law, these exceptions apply only in those rare instances where the equitable interest of the party asserting estoppel is "compelling" and the loss which it would sustain is "unwarrantable" and "unconscionable."

There are no compelling circumstances or unconscionable losses involved in this case. Petitioners did not lose the opportunity to a final and accurate determination of the issue involved. Also, the petitioners failed to demonstrate that the respondent's mistake induced a detrimental change of position in reliance on the mistake. Consequently, petitioners' estoppel

argument is rejected and petitioners' claims for rental proper-
ty depreciation and expense deductions must be denied.

*Decision will be entered for the respondent.*