T.C. Summary Opinion 2003-24


UNITED STATES TAX COURT


JAMES GILL AND KATIE GILL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8023-02S.               Filed March 19, 2003.


James and Katie Gill, pro sese.

<u>Michael D. Zima</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  All subsequent section references are to the Internal Revenue Code in effect for 1999, the taxable year in issue.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1999 in the amount of $577.

The only issue for decision is whether respondent should be estopped from collecting an erroneous refund paid in respect of what respondent concedes was petitioners' properly reported tax liability for the year in issue. We hold that respondent should not be so estopped.

Background

Some of the facts have been stipulated, and they are so found. Petitioners resided in Cocoa, Florida, at the time that their petition was filed with the Court.

In 1999, petitioner Katie Gill (Mrs. Gill) received, inter alia, Social Security benefits in the amount of $7,614. The Social Security Administration issued a Form SSA-1099, in respect of such benefits. Although the record does not include a copy of the Form SSA-1099 that was sent to Mrs. Gill, box 5 would presumably have shown the amount of $7,614.[2]

Respondent's Instructions for Form 1040A for 1999 direct the taxpayer to report on line 13a (Social Security benefits) the amount from box 5 of the taxpayer's Form SSA-1099. Respondent's

---

[2] Form SSA-1099 for 1999 includes the following eight boxes: Box 1 "Name"; Box 2 "Beneficiary's Social Security Number"; Box 3 "Benefits Paid in 1999"; Box 4 "Benefits Repaid to SSA in 1999"; Box 5 "Net Benefits for 1999 (*Box 3 minus Box 4)*"; Box 6 "Voluntary Federal Income Tax Withheld"; Box 7 "Address"; and Box 8 "Claim Number *(Use this number if you need to contact SSA.)*".

Instructions then direct the taxpayer to report on line 13b ("Taxable amount (see page 28)") the portion of the taxpayer's Social Security benefits that is taxable pursuant to the Worksheet on page 29 of the Instructions.[3]

In completing their 1999 Form 1040A, petitioners left line 13a blank and placed the figure "3807.00" in line 13b. The figure "3807.00" represents one-half of the Social Security benefits that were received by Mrs. Gill in 1999; that figure also correctly represents the amount of such benefits that was properly includable in petitioners' income for 1999.

On their 1999 Form 1040A, petitioners reported adjusted gross income in the amount of $41,053, taxable income in the amount of $28,353, and tax in the amount of $4,256.[4] Petitioners enclosed with their return a check in the amount of the difference ($256.65) between their reported liability ($4,256) and the total amount of their withholding ($3,999.35).

Upon receiving petitioners' 1999 return, respondent mistakenly concluded that petitioners had overreported their income by $3,807; i.e., the amount reported on line 13b as the taxable amount of Social Security benefits received. Respondent

---

[3] The Worksheet reflects the statutory formula set forth in sec. 86 that determines the amount of Social Security benefits that is includable in the taxpayer's gross income.

[4] The parties agree that petitioners' reported tax liability of $4,256 represents petitioners' correct tax liability for 1999.

then recalculated petitioners' tax liability as $3,679 and, in July 2000, issued a refund check in the amount of $580.99.[5]

Upon receiving the refund check, petitioners questioned the matter by contacting one of respondent's representatives at an "800 number". The representative agreed with petitioners that respondent had made a mistake and requested that petitioners return the refund check. Petitioners did so. However, a couple of months thereafter, by letter dated September 7, 2000, another of respondent's representatives advised petitioners as follows:

> We received the returned refund check for $580.99. Our records show you incorrectly figured your pensions and annuities as taxable social security. The refund is correct and will be reissued.
>
> If you have any questions, please call Ms. Robbin Cooley * * * .

Petitioners contacted Ms. Cooley, who insisted that petitioners had incorrectly reported their Social Security benefits as taxable. Thereafter, upon receipt of the second refund check, petitioners cashed it.

Ultimately, well over a year later, respondent concluded that petitioners had correctly reported their Social Security benefits and that respondent had erred in issuing petitioners a

---

[5] The amount of $580.99 was calculated as follows:

| | |
|---|---:|
| Liability reported and paid per return | $4,256.00 |
| less: Liability as recalculated by respondent | -3,679.00 |
| Decrease in tax | 577.00 |
| plus: Interest due petitioners | 3.99 |
| Amount of refund check | 580.99 |

refund check.  Accordingly, by notice dated March 22, 2002, respondent determined a deficiency in petitioners' income tax for 1999 in the amount of $577.

Discussion[6]

The parties agree that petitioners' correct tax liability for 1999 is $4,256, which is the amount reported by petitioners as their tax liability on their 1999 Form 1040A.  Nevertheless, petitioners contend that they should not be liable for any deficiency.  At trial, petitioner James Gill expressed his view as follows:

> I'm very frustrated.  I feel that I have been harassed.  I have tried over the years to do my own taxes correctly and I did do them correctly in this case, Your Honor.
>
> If the Government makes a mistake, my feelings are they ought to write it off.  That was their -- I don't have the money, I have more debt problems; I have, you know, a need for the money.  The situation has changed since 1999 and when I filed this return.

Essentially, petitioners seek to estop respondent from pursuing the present action against them.

Although the doctrine of equitable estoppel is applicable against the Commissioner, it is well established that the doctrine is applied against the Commissioner with the utmost caution and restraint.  <u>Schuster v. Commissioner</u>, 312 F.2d 311,

---

[6]  We need not decide whether sec. 7491, concerning burden of proof, applies to the present case because the facts are not in dispute and the issue is one of law.  See <u>Higbee v. Commissioner</u>, 116 T.C. 438 (2001).

317 (9th Cir. 1962), affg. 32 T.C. 998 (1959) and <u>First W. Bank & Trust Co. v. Commissioner</u>, 32 T.C. 1017 (1959); <u>Boulez v. Commissioner</u>, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987); <u>Estate of Emerson v. Commissioner</u>, 67 T.C. 612, 617 (1977). The rationale for this rule of law has been articulated as follows:

> the tendency against Government estoppel is particularly strong where the official's conduct involves questions of essentially legislative significance, as where he conveys a false impression of the laws of the country. Obviously, Congress's legislative authority should not be readily subordinated to the action of a wayward or unknowledgeable administrative official. Accordingly, the general proposition has been that the estoppel doctrine is inapplicable to prevent the Commissioner from correcting a mistake of law. See Automobile Club v. Commissioner, 353 U.S. 180 [, 183-184 (1957)]. [Fn. ref. and further citations omitted.]

<u>Schuster v. Commissioner</u>, <u>supra</u> at 317. In short, "the policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." <u>Id.</u>

Although we can appreciate petitioners' frustration, the fact of the matter is that the events of the present case do not provide a basis for estoping respondent from collecting an erroneous refund paid in respect of what respondent concedes was petitioners' properly reported tax liability for the year in issue. See <u>Kronish v. Commissioner</u>, 90 T.C. 684, 695-697 (1988); <u>Century Data Sys., Inc. v. Commissioner</u>, 86 T.C. 157, 165 (1986);

see also <u>Dixon v. United States</u>, 381 U.S. 68, 72-73 (1965);

<u>McGuire v. Commissioner</u>, 77 T.C. 765, 779-780 (1981).

Accordingly, we are left with no alternative but to sustain

respondent's deficiency determination.

Reviewed and adopted as the report of the Small Tax Case

Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>[7]

---

[7] In an action for redetermination of a deficiency, this Court does not generally have jurisdiction over interest. Accordingly, the decision that we shall enter will speak only to petitioners' liability for the $577 deficiency in income tax. However, we note that at trial, counsel for respondent acknowledged that interest on the deficiency will be abated by respondent.