T.C. Summary Opinion 2014-109

UNITED STATES TAX COURT

KEVIN M. CAMPBELL AND PAMELA J. CAMPBELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29222-13S.                          Filed December 22, 2014.

<u>Carol Ann Szczepanik</u>, for petitioners.

<u>Nancy P. Klingshirn</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $2,800 in petitioners' Federal income tax for 2011. Petitioners, husband and wife, filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioners resided in Ohio.

The sole issue remaining for decision is whether petitioners may exclude from gross income retirement pay of $9,210 that Mr. Campbell received from the U.S. Coast Guard (Coast Guard) during 2011.[2] To the extent not discussed herein, other issues are computational and flow from our decision in this case.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

---

[1](...continued)
Code, as amended and in effect for 2011, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Petitioners reported that Mr. Campbell received wages of $75,366 from the Cuyahoga County Sheriff's Department during 2011. Respondent concedes that petitioners are entitled to reduce Mr. Campbell's wages by $9,360.

## I. Mr. Campbell's Coast Guard Service and Disability Retirement

Mr. Campbell enlisted in the Coast Guard on July 12, 1987. His military service was cut short in 1990, however, when he was diagnosed with insulin-dependent diabetes mellitus. The Coast Guard concluded that Mr. Campbell's illness rendered him unfit for duty.

### A. Statutory Provisions

At all times relevant to this case, chapter 61 of title 10 of the United States Code established the standards and processes by which the armed forces (including the Coast Guard)[3] determine whether a service member may be retired or separated from service because of a medical disability. Generally speaking, a service member found unfit for duty because of a permanent and stable physical disability is eligible to receive retirement pay if the member has at least 20 years of service or his disability is rated at least 30% under the Department of Veterans Affairs standard schedule of rating disabilities (VASRD). See 10 U.S.C. sec. 1201 (2012).[4] A service member otherwise entitled to retire permanently under the provisions of 10 U.S.C. sec. 1201, but whose disability is not determined to be

___

[3]The Coast Guard is a military service and a branch of the armed forces of the United States. See 14 U.S.C. sec. 1 (2012).

[4]The VASRD is set forth at 38 C.F.R. part 4 (2012).

permanent and stable, is eligible to be placed in temporary disability retirement status.  See 10 U.S.C. sec. 1202 (2012).  A service member in temporary disability retirement status must submit to periodic physical examinations, and a determination whether a particular disability is permanent and stable must be made within five years.  See 10 U.S.C. sec. 1210(a) and (b) (2012).

B.  Temporary Disability Retirement

After his diagnosis the Coast Guard evaluated Mr. Campbell and, effective August 5, 1990, placed him in temporary disability retirement status.  At the time the Coast Guard assigned Mr. Campbell a VASRD rating of 40%.

By letter dated September 20, 1990, the Coast Guard informed Mr. Campbell that he was entitled to monthly retirement pay equal to the product of his base pay multiplied by his disability rating.  See 10 U.S.C. sec. 1401 (2012).  The letter further stated that the Coast Guard would withhold Federal income tax from his monthly retirement payments.  Mr. Campbell subsequently began to receive monthly retirement pay of $403 (offset by $50 allotted to survivor benefits and $20 for Federal income tax withholding).

C. Mr. Campbell's Communications With the Coast Guard

From early 1992 through 1995 Mr. Campbell attempted to convince the Coast Guard that his retirement pay was exempt from Federal income tax. During this period he submitted numerous Forms W-4, Employee's Withholding Allowance Certificate, stating that he was exempt from income tax withholding. By letter dated June 18, 1994, Mr. Campbell provided the Coast Guard with a copy of a publication titled "PHYSICAL DISABILITY EVALUATION SYSTEM" which was provided to him by Coast Guard legal counsel at the time of his retirement. The publication stated that Coast Guard disability retirement pay is not taxable. The record does not include any response from the Coast Guard to Mr. Campbell's entreaties, and the Coast Guard continued to withhold Federal income tax from his monthly retirement payments.

D. Permanent Disability Retirement

By letter dated April 6, 1995, the Coast Guard notified Mr. Campbell that his diabetes qualified as a permanent physical disability, he was unfit for duty, and he would be permanently retired from the Coast Guard effective May 4, 1995. At that time the Coast Guard assigned Mr. Campbell a VASRD rating of 60%, and he retired under the provisions of 10 U.S.C. sec. 1201. His retirement pay was computed by multiplying his base pay by 60% (his disability rating). The Coast

Guard again informed Mr. Campbell that his retirement pay was taxable and that it would withhold Federal income tax from his monthly payments.

## II. Department of Veterans Affairs

Mr. Campbell testified that at the time he was permanently retired from the Coast Guard, he contacted the Department of Veterans Affairs (VA), submitted to a physical examination, and received a VA disability rating. He could not recall the percentage of his VA disability rating but remembered that it was less than the disability rating that he received from the Coast Guard. Mr. Campbell was unable to produce any documents from the VA related to his physical examination or disability rating.

## III. Mr. Campbell's Employment as a Deputy Sheriff

Shortly after he was placed in temporary disability retirement status by the Coast Guard, Mr. Campbell was hired by the Cuyahoga County Sheriff's Office as a deputy sheriff. He continued to be employed by the sheriff's office at the time of trial and testified that he was able to perform his duties without any special accommodations.

IV. Tax Reporting

A. Forms 1099-R

Over the years, the Coast Guard routinely issued to Mr. Campbell Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting that he had received taxable retirement pay. It was Mr. Campbell's practice to provide the Forms 1099-R to his accountant, Ralph DeLuca, who prepared and filed petitioners' tax returns. Mr. DeLuca testified at trial that he routinely reviewed the Forms 1099-R, concluded that the retirement payments were not includable in income, and excluded the payments from petitioners' gross income.

B. Contact With the Internal Revenue Service (IRS)

Every few years, the IRS issued to Mr. Campbell a Notice CP-2000 proposing to increase his taxable income by the amount of his Coast Guard retirement pay. Mr. Campbell forwarded the notices to Mr. DeLuca, who would promptly contact the IRS and assert that the retirement pay was exempt from Federal income tax. After this exchange, Mr. Campbell normally received a "No Change" letter from the IRS accepting his tax return as filed.

The record includes a "No Change" letter that the IRS issued to Mr. Campbell for the taxable year 1991. Although the letter invited Mr. Campbell to

submit an official request for a letter ruling regarding the status of his retirement pay, he failed to do so.

## V. Petitioners' 2011 Tax Return

In 2011 Mr. Campbell received Coast Guard retirement pay of $9,210. Petitioners timely filed a joint Federal income tax return for 2011 reporting the retirement pay on line 16a of their return as pension and annuity income, but they excluded that amount from the taxable amount of pension and annuity income reported on line 16b. As previously discussed, respondent issued a notice of deficiency to petitioners determining that Mr. Campbell's retirement pay is required to be included in their gross income.

## Discussion

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer normally bears the burden of proving those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).[5]

Section 61(a) provides that gross income means "all income from whatever source derived". Pensions and retirement allowances constitute gross income

---

[5]Petitioners do not contend that the burden of proof should be shifted to respondent under sec. 7491(a).

unless excluded by law. Sec. 61(a)(11); sec. 1.61-11(a), Income Tax Regs. Military retirement pay is pension income within the meaning of section 61(a)(11). Wheeler v. Commissioner, 127 T.C. 200, 205 n.11 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

It is well established that statutory exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995). Taxpayers seeking an exclusion from income must demonstrate that they are eligible for the exclusion and "bring themselves within the clear scope of the exclusion." Dobra v. Commissioner, 111 T.C. 339, 349 n.16 (1998).

## I. Exclusion for Military Retirement Pay

Section 104(a)(4) provides the general rule that amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country are not included in gross income. Section 104(b)(1) and (2), however, limits the exclusion prescribed in subsection (a)(4), as relevant here, to an individual who "on application therefor * * * would be entitled to receive disability compensation from the Veterans Administration."[6] Section 104(b)(4) further provides that if an individual is

---

[6]With limited exceptions, benefits administered by the VA have long been exempt from taxation. See 38 U.S.C. sec. 3101(a) (1958) (the predecessor to 38

(continued...)

described in subsection (b)(2), the amount excludable from gross income under subsection (a)(4) for any period "shall not be less than the maximum amount which such individual, on application therefor, would be entitled to receive as disability compensation from the Veterans' Administration."[7]

The restrictions imposed in section 104(b) are better understood in the light of the legislative history underlying the Tax Reform Act of 1976, Pub. L. No. 94-455, sec. 505(b), 90 Stat. at 1567. At that time Congress recognized that the exclusion from gross income prescribed in section 104(a)(4) invited taxpayer abuse, which it described in relevant part as follows:

> Criticism of the exclusion of armed forces disability pensions from income focuses on a number of cases involving the disability retirement of military personnel. In many cases, armed forces

---

[6](...continued)
U.S.C. sec. 5301(a)(1) (2012)); Wallace v. Commissioner, 128 T.C. 132, 141 n.5 (2007).

[7]In Reimels v. Commissioner, 123 T.C. 245, 257 (2004), aff'd, 436 F.3d 344 (2d Cir. 2006), we stated in relevant part:

> [A]lthough section 104(b)(4) is not a model of clarity, its legislative history suggests that it was intended to apply with respect to retired military personnel who do not receive the Veterans' Administration benefits to which they are otherwise entitled. In certain circumstances, section 104(b)(4) provides such persons with a tax benefit at least as great as the tax exemption that would have been available for the forgone Veterans' Administration benefits.

personnel have been classified as disabled for military service shortly before they would have become eligible for retirement principally to obtain the benefits of the special tax exclusion on the disability portion of their retirement pay.  In most of these cases the individuals, having retired from the military, earn income from other employment while receiving tax-free 'disability' payments from the military.  The committee questions the equity of allowing retired military personnel to exclude the payments which they receive as tax-exempt disability income when they are able to earn substantial amounts of income from civilian work, despite disabilities such as high blood pressure, arthritis, etc.

＊　　＊　　＊　　＊　　＊　　＊　　＊

The committee amendment eliminates the exclusion of disability payments from income for those covered under section 104(a)(4), that is, members of the armed forces of any country, NOAA, the Public Health Service and the Foreign Service.  This change applies only prospectively to persons who join these government services after September 24, 1975.  Specific exceptions continue the exclusion in certain cases for future disability payments for injuries and sickness resulting from active service in the armed forces of the United States.

At all times, Veterans' Administration disability payments will continue to be excluded from gross income.  In addition, even if a future serviceman who retires does not receive his disability benefits from the Veterans' Administration, he will still be allowed to exclude from his gross income an amount equal to the benefits he could receive from the Veterans' Administration.  Otherwise, future members of the armed forces will be allowed to exclude military disability retirement payments from their gross income only if the payments are directly related to 'combat injuries.' * * *

S. Rept. No. 94-938, at 138-139 (1976), 1976-3 C.B. (Vol. 3) 49, 173-177; see

Kiourtsis v. Commissioner, T.C. Memo. 1996-534.

II. Disability Ratings

    A. VA

The United States will compensate a veteran of the armed forces for a disability resulting from personal injury suffered or disease contracted in the line of duty and in active service if the veteran was discharged or released under conditions other than dishonorable and if the disability is not the result of the veteran's own willful misconduct or abuse of alcohol or drugs. See 38 U.S.C. secs. 1110, 1131 (2012). In this regard the VA is authorized to adopt a schedule of ratings of reductions in earning capacity from specific injuries based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. See 38 U.S.C. sec. 1155 (2012) (providing in pertinent part that the VASRD shall be constructed so as to provide only 10 grades of disability, e.g., 10%, 20%, and so on, upon which payments of compensation shall be based). Compensation amounts for each of the VA's 10 grades of disability are fixed by statute. See 38 U.S.C. secs. 1114, 1134 (2012).

In 1995 the VASRD (Diagnostic Code 7913) provided the following five disability levels and rating criteria for diabetes mellitus:

| 7913 Diabetes mellitus | Rating |
|---|---|

Requiring more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated....................................................................... 100

Requiring insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated.................................. 60

Requiring insulin, restricted diet, and regulation of activities....... 40

Requiring insulin and restricted diet, or; oral hypoglycemic agent and restricted diet................................................................. 20

Manageable by restricted diet only................................................. 10

See 38 C.F.R. sec. 4.119 (1996).

B. Coast Guard

As previously mentioned, to qualify for disability retirement from the armed forces a service member generally must be found unfit to perform the duties of his office, grade, or rank because of physical disability, see 10 U.S.C. sec. 1201(a) (2012); Parks v. Commissioner, T.C. Memo. 1979-182, and must have at least 20

years of service or a disability that is rated at least 30% under the VASRD at the time of the determination, see 10 U.S.C. sec. 1201(b)(3).

III.  Mr. Campbell's Retirement Pay

Respondent determined that Mr. Campbell's Coast Guard retirement pay is not excludable from gross income.  Mr. Campbell disputes respondent's determination and contends that his retirement pay qualifies for exclusion under section 104(a)(4) because he otherwise would be entitled to VA disability benefits within the meaning of section 104(b).

When Mr. Campbell's disability was diagnosed, he did not have the years of service needed to qualify for a disability retirement.  The Coast Guard nevertheless concluded that he was entitled to a disability retirement because his VASRD rating exceeded 30%.  Indeed, the Coast Guard ultimately concluded that Mr. Campbell's VASRD rating was 60%.

As discussed above, section 104(b)(2) limits the exclusion from gross income for disability payments to individuals who would be entitled to receive disability compensation from the VA upon application.  Section 104(b)(4) further provides that the amount excluded under section 104(a)(4) will not be less than the maximum amount which the individual would be entitled to receive as disability compensation from the VA on application.

Mr. Campbell testified that at the time the Coast Guard determined that he was temporarily disabled, he submitted to a physical examination at the VA and was awarded a disability rating. He could not remember the precise VA disability rating and only recalled that it was less than the 60% disability rating that the Coast Guard awarded.

We are unable to determine, on this record, that Mr. Campbell would be entitled to receive disability compensation from the VA. Although the Coast Guard and the VA apply the same rating standards--the VASRD-- the Coast Guard and the VA approach the question of disability ratings from different perspectives. Whereas the Coast Guard focuses on whether a service member is able to perform his or her miliary duties at a given time, the VA rates disabilities by weighing the impact of an injury or illness on a veteran's earning capacity in a civil occupation over his or her lifetime. See Stine v. United States, 92 Fed. Cl. 776, 795 (2010) ("[A] rating disparity between the two systems is not unusual because of the differing standards that must be applied."), aff'd, 417 Fed. Appx. 979 (Fed. Cir. 2011); Lockwood v. United States, 90 Fed. Cl. 210, 219 (2008) ("Both the Department of Veterans Affairs and the military service branches rely on the * * * [VASRD], however, they do so in different ways."); see also Cleary v. Commissioner, 60 T.C. 133, 140 n.10 (1973) ("'[T]he basis for * * * [VA] action

is different from the basis upon which a retiring board determines whether or not an officer is entitled to retirement for physical disability[.]'" (quoting Furlong v. United States, 153 Ct. Cl. 557, 565 (1961))).

Although we recognize the seriousness of Mr. Campbell's illness, we have no way of knowing whether the VA would award him disability compensation, and if so, the amount that he would be compensated. Consequently, we are unable to conclude that any amount of his Coast Guard retirement pay is excludable from gross income under section 104(a)(4).

IV. Estoppel

In the alternative, petitioners point to the IRS' "course of conduct" over many years and assert that respondent should be precluded from determining that Mr. Campbell's retirement pay is taxable in this case. Specifically, petitioners emphasize that the IRS issued numerous "No Change" letters to Mr. Campbell over the years acknowledging that his retirement pay is exempt from Federal income tax. As petitioners see it, Mr. Campbell is entitled to closure at this point.

It is well settled that each tax year is the origin of a new tax liability, and each year stands on its own. Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183-184 (1957). The Commissioner is not required for any given year to allow a tax benefit permitted for a previous or subsequent year. See, e.g., Pekar v.

Commissioner, 113 T.C. 158, 166 (1999).  The acceptance of or acquiescence in returns filed by a taxpayer in previous years creates no estoppel against the Commissioner, nor does the overlooking of an error in a return upon audit create any such estoppel.  See Dixon v. United States, 381 U.S. 68, 72-73 (1965); Auto. Club of Mich. v. Commissioner, 353 U.S. at 183-184; McGuire v. Commissioner, 77 T.C. 765, 779-780 (1981).  In short, neither respondent nor the Court is constrained in this case by "No Change" letters or closing notices issued to Mr. Campbell for taxable years not before the Court.  See, e.g., Gould v. Commissioner, 139 T.C. 418, 445 (2012), aff'd, 552 Fed. Appx. 250 (4th Cir. 2014); Holt v. Commissioner, T.C. Memo. 1999-348; Kiourtsis v. Commissioner, T.C. Memo. 1996-534.  Accordingly, although Mr. Campbell was allowed to exclude his Coast Guard retirement pay from gross income for earlier taxable years, petitioners may not exclude any portion of his retirement pay from gross income for 2011.

To reflect the foregoing,

Decision will be entered

under Rule 155.